IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DAVID L. WOODWARD,**

      **Plaintiff,**

      v.                         **CASE NO.  25-3110-JWL**

**JEFF ZMUDA, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff and Kansas prisoner David L. Woodward brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Lansing Correctional Facility (LCF) in Lansing, Kansas and he has paid the required filing fee. The Court has conducted the statutorily required screening of the complaint and Plaintiff will be given time to file an amended complaint that contains only properly joined parties and claims and does not suffer from the deficiencies identified in this order. If Plaintiff fails to timely file an amended complaint that cures the deficiencies, the Court will sever misjoined claims and parties into separate cases and portions of this matter may be dismissed without further prior notice to Plaintiff. Also before the Court are Plaintiff's motion to amend complaint (Doc. 4), his motion for court orders (Doc. 5), and his "Motion Confirming Memorandum Filing" (Doc. 6). For the reasons set forth below, these motions will be denied.

### I.  Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, at 550 U.S. at 570).

**II. The Complaint**

As Defendants in this action, Plaintiff names Secretary of the Kansas Department of Corrections (KDOC) Jeff Zmuda and the following LCF employees: J. Crouse, who works in the

mailroom; "ISA official" Leslie West; Unit Team Manager (fnu[1]) Keon; Unit Team Supervisor (fnu) Speer; Unit Team Member (fnu) Cleaver; Lieutenant (fnu) Jewel; Deputy Wardens (fnu) Ball, (fnu) Reese, and (fnu) Skidmore; an unnamed CMII Compact Administrator[2]; Hearing Officer (fnu) Snodgrass; Warden Jesse Howes; and "other unnamed officials and staff" at LCF. (Doc. 1, p. 1-6.) Plaintiff brings three claims in this suit.[3] Because each claim stems from different facts involving different individuals, they are detailed herein by claim, setting forth the factual background and then the legal claim.

### A. Count I

As the factual background to Count I, Plaintiff alleges that on April 1, 2025, Defendants Crouse and Howes stopped delivery to Plaintiff of certain "publications, magazines, [and] religious materials," including TV Guide, TV Weekly, US Weekly, People, Town & Country, Elle, Harper's Bazaar, Remind, Cosmopolitan, Amazing Facts, and Discover. (Doc. 1, p. 6-7. Plaintiff maintains paid subscriptions to these publications that cost him a total of over $400.00 per year, and he has received them for more than 2 years while incarcerated. (Doc. 1-1, p. 1.) Plaintiff asked Defendants Speer and mail room staff why he was not receiving the publications and learned that Defendant CMII Compact Administrator and "the 'Wardens'" had permanently suspended delivery to Plaintiff of all publications. *Id.*

---

[1] The term "(fnu)" is an abbreviation for "first name unknown."

[2] The complaint stated that Plaintiff believed this individual's last name to be Wildermuth. (Doc. 1, p. 4.) A later filing from Plaintiff indicates that perhaps the "CMII" in question was Darcie Holthaus. (Doc. 4, p. 1.) Plaintiff will be able to clarify this in any amended complaint he files. For the purposes of this order, this Defendant will remain unnamed. Similarly, in a motion filed after the complaint, Plaintiff seeks to add Defendants to this matter. (Doc. 4, p. 1-2.) Plaintiff will be granted time in which to file a complete and proper amended complaint, and he should name in that amended complaint any and all individuals he wishes to name as Defendants in this action.

[3] The Court has liberally construed the various filings Plaintiff has submitted to this point to determine the nature of the claims and the facts alleged in support of each claim. Plaintiff should be aware, however, that any amended complaint filed in this case must be sufficient, in and of itself, to state a plausible claim for relief against a named Defendant. Additional evidence may be submitted if this case proceeds, for example, to discovery. But in this initial screening phase of this case, the Court will not in the future gather factual allegations from multiple filings by Plaintiff.

On May 3, 2025, Plaintiff began receiving mail censorship notices issued by Defendant Crouse. *Id.* at 2. The notices, an example of which Plaintiff has provided, stated that at least some of the publications were considered a threat to public officials or the general public and/or unauthorized correspondence with a person under the age of 18 years old, in violation of K.A.R. 44-12-601(d)(1)(B). (Doc. 1, p. 7; Doc. 1-1, p. 1-2; Doc. 6-1, p. 12.) As of May 27, 2025, Plaintiff alleges, none of his protests of the censorship have been answered nor has he received delivery of any of the identified publications. (Doc. 1-1, p. 2.)

As Count I, Plaintiff alleges the violation of the rights guaranteed to him by the First Amendment to the United States Constitution, specifically citing his right to access information and his right to exercise religious freedom. (Doc. 1, p. 7.) Plaintiff explains that Amazing Facts and Discover are religious publications. *Id.* at 6. He further asserts that Defendant Zmuda should be held liable because "he has the ultimate authority to override censorship" and order the delivery to Plaintiff of the relevant publications. *Id.* at 9.

### B. Count II

As the factual background for Count II, Plaintiff alleges that LCF policy requires all cell doors to be closed and locked except at specified times of the day, during which staff members may open cell doors. (Doc. 6-1, p. 3.) Even during this time, Plaintiff alleges, cell doors should be secured when an inmate is not actively entering or exiting a cell. *Id.* On April 1, 2025, Plaintiff was in his cell in B6 pod, but his door was not secured. *Id.* Three men entered his cell, attacked him, and stole his television, table fan, and a game player. *Id.* They attempted to steal Plaintiff's commissary items as well, but those items were in a padlocked locker that Plaintiff refused to open even after the men "strong armed" him. *Id.* The men left, but threatened to return. *Id.*

Plaintiff immediately reported the incident to the LCF staff on duty, whose initial indifference allowed the perpetrators to evade capture. *Id.* When Plaintiff sought protective custody, he was handcuffed and taken by wheelchair to A2 pod. *Id.* Plaintiff, who is 82 years old, has been confined to a wheelchair since 2024 because he is a fall risk. *Id.* at 3-5. When he arrived at A2 pod, he was ordered to remove his pants and, dressed in a t-shirt and boxer shorts, he was locked into a caged shower for 5 hours. *Id.* at 3-4. He was then taken to the prison infirmary and placed in a crisis cell, which had only a hard bench to lay on with no mattress available. *Id.* at 4. Plaintiff states that laying on the bench was painful but his complaints went unheeded. *Id.*

He remained in the infirmary crisis cell until April 3, 2025, when he was taken—again handcuffed and by wheelchair—to A4 pod, which is a segregation unit, and confined to a cell with another inmate. *Id.* at 4. From that point until approximately May 20, 2025, Plaintiff was allowed only 2 one-hour yard periods per week, one of which included telephone access, and two showers per week. *Id.* His yard time later increased to 5 one-hour periods per week and showers became available three days per week. *Id.* Plaintiff has not received his property that was packed out from his cell in B6 pod, including commissary items, a radio, and his legal work, despite submitting a request on or around June 9, 2025. *Id.*; (Doc. 4, p. 1).

Due to being housed in a segregation unit, Plaintiff is not allowed to purchase anything from the inmate canteen other than hygiene products. (Doc. 6-1, p. 4.) He alleges that he has not been provided sheets, a blanket, or a pillow; he has been wearing the same clothing for "several weeks" and has been told that staff "have no clothing to issue [him]"; he had no laundry service from April 3, 2025 until approximately May 20, 2025; he has received no cleaning supplies; and complaints about these conditions "are never answered." *Id.*

Plaintiff further alleges that on May 28, 2025, he was moved to A1 pod, a "'Protective Custody' pod." (Doc. 6-1, p. 5.) Plaintiff also asserts that the Americans with Disabilities Act (ADA) has been violated by the failure to assign him to "a handicap cell," which exist at LCF but are inhabited by "non-handicapped inmates." *Id.* Finally, Plaintiff notes that since August 2023, he unsuccessfully has been seeking a transfer to the Winfield Geriatric and Cognitive Care Unit of the KDOC in Winfield, Kansas. *Id.*

As Count II, Plaintiff alleges a violation of the Eighth Amendment, contending that the conditions of confinement he has endured after his request for protective custody constitute" elder abuse, mistreatment of a confined person, handicap violations[,] and cruel and unusual punishment." (Doc. 1, p. 7.) Plaintiff further alleges that Defendants Keon, Speer, and Cleaver "handle and control staff activity" in A4 pod at LCF and are responsible for ensuring humane, safe, and healthy living conditions, and that they do so "under the authority of" Defendants Howes and Zmuda. (Doc. 1, p. 7, 9.)

### C. Count III

As the factual background for Count III, Plaintiff alleges that outgoing prison mail is stamped with the following text: "NOTICE! This correspondence was mailed from an institution operated by the Kansas Department of Corrections. Its contents are uncensored." (*See* Doc. 1-1, p. 8.) On May 23, 2025, LCF staff opened two stamped and sealed envelopes that were in the outgoing LCF mail, addressed to Corey Woodward, and designated as being from Plaintiff. (Doc. 1, p. 10; Doc. 6-1, p. 14.) Corey Woodward is Plaintiff's son and his attorney-in-fact under a general durable power of attorney Plaintiff executed in March 2023. (Doc. 5-1, p. 1-7.) LCF was notified in August 2023 that Corey Woodward is Plaintiff's attorney-in-fact. (Doc. 6-1, p. 8.)

LCF Staff read the contents of the envelopes, which contained letters and "portions of a short story" that included graphic descriptions of sexual acts involving "girls under the age of 18." (Doc. 1-1, p. 6.) The letters also asked Corey Woodward whether the story was well written and encouraged sharing and publicizing of the story. *Id.* The stories purported to be written by an author named Lee Roy. (Doc. 6-1, p. 6.) The same day, Defendant West wrote a disciplinary report based on these events, alleging that the stories were written by Plaintiff and that Plaintiff had violated the regulation against inmate possession of sexually explicit materials. *Id.* at 14. Defendant Jewell approved the disciplinary report. *Id.*

At a disciplinary hearing on June 2, 2025, Plaintiff argued that he was not in possession of the material since it was discovered in the mailroom, but Defendant Snodgrass, who was the hearing officer, found Plaintiff guilty of possession of sexually explicit materials and ordered 10 days in disciplinary segregation and 60 days of restrictions. *Id.* at 8. Defendant West later informed Plaintiff that all of his future correspondence will be subject to inspection and censorship. *Id.* Plaintiff believes a total of 6 letters placed in LCF outgoing mail for delivery to Corey Woodward have been intercepted by LCF mail room staff. (Doc. 4, p. 2.)

As Count III, Plaintiff alleges that the events detailed above violated his First Amendment rights "to write stories and correspond with family." (Doc. 1, p. 8.) In an attachment to the complaint, Plaintiff also asserts that the events violated his First Amendment right to freedom of expression without censorship by the government. (Doc. 1-1, p. 7.) Moreover, Plaintiff asserts that the opening of mail addressed to Corey Woodward violated attorney-client privilege since Corey Woodward is Plaintiff's attorney-in-fact. (Doc. 1-1, p. 7-8.)

### D. Relief Requested

As relief in this matter, Plaintiff seeks (1) an order directing LCF staff to deliver to Plaintiff the publications identified in this matter and any future publications not otherwise prohibited; (2) compensatory damages for loss caused by the non-delivery and/or destruction of the publications; (3) court costs, filing fees, and attorney fees for this matter; (4) an award of $10,000.00; (5) an order directing Defendants to provide safe and suitable housing and living conditions for elderly inmates; (6) an order mandating that Plaintiff's outgoing mail not be censored; (7) declaratory relief holding that Plaintiff has the right to write stories "without interference from staff or officials of the Kansas Department of Corrections"; and (8) an order vacating Plaintiff's disciplinary conviction. (Doc. 1, p. 12.)

## III. Discussion

### A. Joinder of Claims and Parties

The complaint now before this Court does not comply with the rules on joining defendants and claims in a single action. Federal Rule of Civil Procedure 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."

While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D.

Kan. 2001) (citation omitted). The Court of Appeals for the Seventh Circuit has explained that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Gillon v. Fed. Bureau of Prisons*, 424 F. Appx. 722, 725 (10th Cir. 2011) (unpublished) (where amended complaint combined separate and unrelated claims, many of them arising out of different alleged incidents against multiple defendants, the court rejected plaintiff's argument that his claims were related because they all allege constitutional violations relating to his overarching allegation of retaliation by prison officials).

In other words, under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." *George*, 507 F.3d at 607. Thus, under Rule 18(a), Plaintiff may bring in a single action multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed connection in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

It is clear from the complaint that Plaintiff's multiple claims neither all involve all named Defendants nor arise from the same transaction or occurrence and involve common questions of law or fact. Highly summarized, Count I alleges a First Amendment violation based on the non-delivery of certain publications to Plaintiff. Count II alleges violations of the Eighth Amendment and the ADA based on an attack on Plaintiff in his cell, the theft of his personal property, and the conditions in which he was housed after requesting protective custody. Count III, like Count I, alleges a First Amendment violation, but bases it on the inspection and censorship of his mail to

Corey Woodward and the related disciplinary report and proceedings. Although Plaintiff at times identifies actions taken by specific Defendants, at other times he simply refers to LCF staff in the collective, making statements such as: "[V]arious staff initiated sanctions on my person and remaining property and subjected me to treatments of abusive behavior and deprivation." (*See* Doc. 1, p. 7.)

Even liberally construing the documents now before the Court, as is appropriate since Plaintiff proceeds pro se, the complaint appears to allege various Defendants were involved in various civil rights violations. Thus, the complaint appears to violate both Rule 18(a) and 20(a)(2). If Plaintiff chooses to file an amended complaint in this matter, the amended complaint must state (1) only those claims that arise against a single defendant or, if Plaintiff wishes to name multiple defendants, (2) only those claims that arise from the same transaction or occurrence and have common questions of fact or law. In the amended complaint, Plaintiff should limit his facts and allegations to properly joined defendants and occurrences. If Plaintiff timely files an amended complaint that fails to comply with the joinder rules described herein, the Court may dismiss misjoined parties or sever misjoined claims without further prior notice to Plaintiff.

Relatedly, Plaintiff has filed a motion that asks the Court to add Corey Woodward as a Plaintiff.[4] (Doc. 4, p. 2.) Federal Rule of Civil Procedure 20(a)(1) governs permissive joinder of plaintiffs in one action. It states that more than one person may join a case as plaintiffs "if: **(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and **(B)** any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

---

[4] Corey Woodward has not signed any motion to join this case as a plaintiff so the Court cannot conclude that he  has consented to join this action as a plaintiff.

That being said, however, courts have found permissive joinder of plaintiffs under Rule 20(a)(1) is not feasible in prisoner litigation. "In the context of prisoner litigation specifically, district courts also have found that the impracticalities inherent in multiple-plaintiff lawsuits militate against permissive joinder otherwise allowed by Rule 20(a)(1)." *Etier v. Soptic*, 2022 WL 1202395, *3 (D. Kan. Apr. 22, 2022) (citations omitted); *see also Bray v. Oklahoma Cnty. Jail Auth.*, 2022 WL 1097094, at *1 (W.D. Okla. 2022) (finding joinder infeasible, noting that the "prison movements and regulations could, at any time, restrict interpersonal communication between the Plaintiffs"). The "pervasive impracticalities associated with multiple-plaintiff prisoner litigation" have been widely recognized. *See Bertolo v. Shain*, 2019 WL 7833967, *4-5 (D. Colo. Oct. 22, 2019) (unpublished).

Although Corey Woodward is not a prisoner, Plaintiff currently is incarcerated. As a prisoner, he is subject to transfer and to prison regulations that may, for legitimate security reasons, restrict or prohibit his communications with Corey Woodward. The Court also notes that Plaintiff is incarcerated in Kansas and Corey Woodward appears to live in Texas. (*See* Doc. 5, p. 2.) Rule 11 of the Federal Rules of Civil Procedures requires that "[e]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Thus, in order for Plaintiff and Corey Woodward to proceed as pro se co-plaintiffs, each pleading, written motion, or other paper filed in this matter would need to be signed by both of them, a requirement made impractical by Plaintiff's incarceration and Corey Woodward's apparent residence in Texas.

The United States District Court for the Eastern District of Tennessee considered whether a prisoner plaintiff and two non-prisoner plaintiffs were properly joined in an action seeking relief under 42 U.S.C. § 1983. *See Locke v. McMinn Cnty. Jail*, 2022 WL 211591, *1-2 (E.D. Tenn. Jan.

24, 2022) (unpublished). After noting similar concerns to those set forth above, such as Rule 11

signing requirements, the court concluded:

> While the joinder of parties is "strongly encouraged" for purposes of judicial
> economy and fairness where it is appropriate, courts have recognized that prisoners
> are "not in the same situation as non-prisoner joint plaintiffs; prisoners'
> circumstances" such as the requirement for exhaustion of administrative remedies,
> the need for each plaintiff to sign each paper filed with the Court, etc., "make joint
> litigation exceptionally difficult."

*Id.* at *1 (citations omitted).

The Court agrees and adopts this rationale, finding that joining Corey Woodward as a

plaintiff in this action would be impractical and inefficient. Thus, the request to do so in the motion

to amend (Doc. 4) will be denied. In addition, the remainder of the motion to amend—which seeks

to add factual allegations, add defendants, and clarify claims—will be denied because the

misjoinder of claims in this matter require Plaintiff to file an amended complaint. Plaintiff should

include in his amended complaint all facts required to state a plausible claim for relief and he may

clarify the basis for the claims therein at that time.

In the interest of judicial efficiency, the Court will identify additional deficiencies that exist

in the complaint now before the Court so that Plaintiff can ensure that the same deficiencies do not

exist in any amended complaint he may choose to file. Plaintiff is cautioned that if these

deficiencies are present in his amended complaint, portions of the amended complaint may be

dismissed without further prior notice to him.

### B.  Personal Participation of Each Named Defendant

An essential element of a civil rights claim under § 1983 against an individual is that

person's direct personal participation in the acts or inactions upon which the complaint is based.

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th

Cir. 2006). A viable § 1983 claim must establish that each defendant caused a violation of

Plaintiff's constitutional rights. *See Walker v. Johiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). As a result, Plaintiff must not only name each defendant in the caption of the complaint, he must do so again in the body of the complaint and include in the body a description of the acts taken by each defendant that violated Plaintiff's federal constitutional rights.

Plaintiff's complaint and memorandum in support are at times clear on which Defendant did what act that Plaintiff asserts violated his constitutional rights. For example, in Count I, Plaintiff clearly asserts that on April 1, 2025, Defendants Crouse and Howes stopped delivering Plaintiff's publications, which included religious materials, which Plaintiff believes violated his First Amendment rights. (Doc. 1, p. 7.) At other points in the complaint and supporting filings, however, Plaintiff uses general and collective terms but does not make clear what acts are attributable to whom. This makes it "impossible for any of these individuals" as well as the Court "to ascertain what particular unconstitutional acts" each is alleged to have committed. *See Robbins*, 519 F.3d at 1250.

For example, in Count II, Plaintiff asserts that "various staff initiated sanctions on my person and remaining property and subjected me to treatments of abusive behavior and deprivation." (Doc. 1, p. 7.) Plaintiff also uses the passive tense in statements like "[m]y cell doors were not secured, allowing the thieves access to my cell, due to negligence by staff." (Doc. 6-1, p. 3.) Neither of these quoted statements attribute a specific act or failure to act to a named Defendant or other specific individual. In short, Plaintiff fails to clearly "isolate the allegedly unconstitutional acts of each defendant." *See Twombly*, 550 U.S. at 565 n. 10. In his amended complaint, Plaintiff must ensure that he specifically alleges facts that show each individual named Defendant personally participated in an alleged constitutional violation.

Relatedly, Plaintiff asserts, at least in part, that Defendant Zmuda is subject to liability due to his role as the other Defendants' superior. (Doc. 1, p. 1.) For example, Plaintiff alleges that the violations that formed the basis for Count II were done "under the authority of Warden Howes and Jeff Zmuda." *Id.* at 7. Although it is not entirely clear, this may be an attempt to include Defendants Zmuda and Howes in the claims asserted in Count II.

"[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). To the extent that Plaintiff in the amended complaint seeks to impose liability on any Defendant solely due to his or her supervisory authority over another individual, such claims will be subject to dismissal.

### C. Rule 8

Relatedly, Plaintiff is advised that a failure to allege sufficiently specific facts to show each defendant's direct personal participation in the acts or inactions upon which the complaint is based implicates Rule 8 of the Federal Rules of Civil Procedure, which requires that a complaint "contain . . . a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." The purpose of Rule 8 "is 'to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief.'" *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1998) (quoting *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1371 (10th Cir. 1979)).

Plaintiff should ensure that any amended complaint he files provides fair notice of the basis of the claim or claims against each named defendant. "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 Fed. Appx. 757, 759 (10th Cir. 2009) (quoting *Robbins*, 519 F.3d at 1250). "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls*, 718 F.3d at 1226. Conclusory allegations of involvement are not sufficient. *See Iqbal*, 556 U.S. at 676.

### D.  Count III

Even liberally construing Count III and taking all facts therein as true, it fails to state a plausible claim for relief. As a reminder, in Count III, Plaintiff alleges the violation of his First Amendment "rights to write stories and correspond with family without prior notification of censorship by the KDOC." (Doc. 1, p. 8.) Plaintiff asserts that LCF mailroom staff had no authority to inspect and censor the outgoing mail in question. Plaintiff also refers to both a right to communicate with his family and the belief that opening mail addressed to his attorney-in-fact violates attorney-client privilege. (Doc. 6-1, p. 7-8.) In addition, Plaintiff asserts that he was not "in possession of" the material in question when it was discovered to be sexually explicit material, so he should not have faced disciplinary proceedings and the subsequent conviction.

### i.  Impact of Attorney-in-Fact Status

At the outset, the Court will address whether Corey Woodward's position as Plaintiff's attorney-in-fact renders their written communication "legal mail" or otherwise affords it a privileged status. (*See*, *e.g.*, Doc. 6-1, p. 7-8.) Simply put, it does not.

K.A.R. 44-12-601(1)(A) defines "legal mail" as

mail affecting the inmate's right of access to the courts or legal counsel. This term shall be limited to letters between the inmate and any lawyer, a judge, a clerk of

court, or any intern or employee of a lawyer or law firm, legal clinic, or legal
services organization, including legal services for prisoners.

This definition dovetails with the understanding that "[t]he privileged treatment accorded legal
mail stems from its importance in protecting inmates' right of access to the courts." *Hinderliter v.
Hungerford*, 814 F. Supp. 66, 68 (D. Kan. 1993). *See also Proudfoot v. Williams*, 803 F. Supp.
1048, 1052 (E.D. Pa. 1992) ("When . . . legal mail is read by prison employees, the risk is of a
'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the
prison or prison employees."). More specifically, the Tenth Circuit has long recognized "the right
of a state prisoner to correspond with his attorney, or the courts, or appropriate state officials
concerning either the legality of his conviction or the conditions of his incarceration." *LeVier v.
Woodson*, 443 F.2d 360, 361 (10th Cir. 1971).

Generally speaking, mail from a prison inmate to an individual who is or could be directly
involved in the inmate's legal proceedings—such as an attorney who does or might in the future
represent the inmate—is constitutionally protected in a way that the inmate's mail to other
individuals is not. In contrast to an attorney who may be involved in representing an inmate in
court proceedings challenging his or her conviction or conditions of confinement, "the
authorization to act under a power of attorney is not an authorization to practice law." *Sanders v.
Funk*, 2007 WL 1158531, *3 (D. Colo. April 6, 2007) (unpublished) (collecting cases). And the
difference between the authorization of an individual to act as an attorney-in-fact and the
authorization of an individual to act as an attorney-at-law is meaningful. (*See* Doc. 3, p. 2 n.1.
(citing *Sanders*, 2007 WL 1158351 at *3, and *In re Guardianship of Hacker*, 2000 WL 36745991,
*1 (Kan. Ct. App. Sept. 1, 2000) (unpublished) ("Although Mabel had executed a power of
attorney . . . that designated the Hackers as her attorneys in fact, the Hackers did not and could not
act as her attorneys at law and did not represent her in the proceedings.")).)

16

Although this Court has not found any case directly on point from within this circuit, other federal courts have held that mail between an inmate and his or her attorney-in-fact is not legal mail for the purposes of prison practices for handling legal mail. *See Langford v. Dzurenda*, 2020 WL 5761076, *1 (D. Nev. Sept. 26, 2020) (unpublished) (holding Mr. Langford had no plausible claim for relief based on the prison opening mail from Mr. Langford outside of the presence of the inmate for whom he was designated attorney-in-fact); *Lavine v. Clarke*, 2009 WL 1794484, *1-3 (W.D. Wash. June 23, 2009) (unpublished) (rejecting argument that inmate's letter to his wife, who served as his attorney-in-fact under a power of attorney, should be treated by prison officials as privileged legal mail). As one court explained it:

> [The] act of appointing [an individual] as an attorney in fact in a power of attorney does not transform [that individual] into an attorney licensed to practice law . . . so as to give rise to an attorney-client relationship and attendant benefits of attorney-client confidentiality and privilege and the rights afforded prisoners with respect to legal mail.

*Langford v. Dzurenda*, 2020 WL 6304205, *3 (D. Nev. Mar. 23, 2020) (unpublished report and recommendation adopted on Sept. 26, 2020). This rationale is sound.

Plaintiff's argument that his mail to Corey Woodward was privileged mail based on Corey Woodward being his attorney-in-fact fails as a matter of law and thus cannot form the basis for a plausible claim for relief in this matter. Relatedly, the request in Plaintiff's "Motion for Court Orders" (Doc. 5) that this Court direct LCF staff to treat mail between Plaintiff and Corey Woodward as privileged due to their attorney-client relationship will be denied. Any claim in an amended complaint filed in this matter that bases its argument on the conclusory assertion that Corey Woodward's status as Plaintiff's attorney-in-fact requires treating mail from Plaintiff to Corey Woodward as privileged, legal mail will be subject to dismissal.[5]

---

[5] If Plaintiff knows of or learns of legal authority that supports his belief that mail to his attorney-in-fact is privileged in the same way as mail to an attorney-at-law, he is welcome to identify that for the Court and reassert the argument.

ii.     **Additional Arguments in Count III**

Determining whether the rest of the arguments in Count III state a plausible claim for relief requires looking at the relevant law that governs the writings and communications of individuals in the custody of the Kansas department of corrections. As noted above, "[a]ny incoming or outgoing mail other than legal, official, or privileged mail may be inspected or read at any time." K.A.R. 44-12-601(b)(6). The regulations also define these terms:

> (1)(A) "Legal mail" means mail affecting the inmate's right of access to the courts or legal counsel. This term shall be limited to letters between the inmate and any lawyer, a judge, a clerk of a court, or any intern or employee of a lawyer or law firm, legal clinic, or legal services organization, including legal services for prisoners.
>
> (B) "Official mail" means any mail between an inmate and an official of the state or federal government who has authority to control, or to obtain or conduct an investigation of, the custody or conditions of confinement of the inmate.
>
> (C) "Privileged mail" means any mail between the inmate and the inmate's physician, psychiatrist, psychologist, or other licensed mental health therapist.

K.A.R. 44-12-601(a)(1)(A)-(C).

Even liberally construing the information now before the Court and taking all factual allegations therein as true, the letters from Plaintiff to Corey Woodward do not fit the legal definitions of legal mail, official mail, or privileged mail. Unless the application of the regulations violated Plaintiff's constitutional rights, Plaintiff cannot obtain relief in this matter based on the inspection and censorship of the letters.

"Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996) (citing *Procunier v. Martinez*, 416 U.S. 396, 408, 418 (1974), *overruled in part by Thornburgh v. Abbott*, 490 U.S. 401, 413-14

---

He must, however, provide more than his conclusory statements that such mail is privileged.

(1989)). The Tenth Circuit has held that "[a] refusal to process *any* mail from a prisoner impermissibly interferes with the addressee's First and Fourteenth Amendment rights." *Id.* at 195 (citing *Martinez*, 416 U.S. at 408). Thus, there is "a constitutional right to have [Plaintiff's] outgoing mail processed for delivery, absent legitimate penological interests to the contrary." *See Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (quoting *Thornburgh*, 490 U.S. at 407).

> The United States Supreme Court
>
> also has recognized, however, that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." [*Turner v. Safley*, 482 U.S. 78, 84 (1987)] (internal quotation marks omitted). Accordingly, prisoners' rights may be restricted in ways that "would raise grave First Amendment concerns outside the prison context." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). In particular, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

*Gee*, 627 F.3d at 1187.

Under this standard, to state a plausible claim that the inspection and censorship of the letters in question under the relevant Kansas administrative regulations violated the First Amendment and pass this initial statutorily required screening phase, Plaintiff "must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Id.* at 1188 (emphasis in original). Plaintiff need not identify and rebut every legitimate penological interest, but he must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Id.*

To the extent that Plaintiff argues that he was unaware that his letters to Corey Woodward were subject to inspection or censorship, the Kansas administrative regulation quoted above makes clear that "[a]ny incoming or outgoing mail other than legal, official, or privileged mail may be inspected or read at any time." *See* K.A.R. 44-12-601(b)(6). The regulation also states that

"[O]utgoing mail, other than legal, official, or privileged mail, may be censored only when there is reasonable belief in any of the following: . . . (E) The mail contains sexually explicit material, as defined and proscribed by K.A.R. 44-12-313." K.A.R. 44-12-601(d)(1).

Finally, if Plaintiff intends to challenge the disciplinary proceedings and conviction that resulted from the inspection and censorship of the mail in question, he is cautioned that the United States Supreme Court has "held that a prisoner may not bring a § 1983 claim challenging a disciplinary hearing [and] seeking damages or declaratory relief when [his] claim would 'necessarily imply the invalidity of the punishment imposed' unless [he] first demonstrates that [his] disciplinary conviction or sentence was previously invalidated." *See Lucas v. Bd. of Cnty. Comm'rs of Cnty. for Larimer Cnty. Colo.*, 2023 WL 8271988, *4 (10th Cir. Nov. 30, 2023) (unpublished) (quoting *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)). Similarly, to the extent that Plaintiff seeks the reversal of his disciplinary conviction, such relief is unavailable in a § 1983 action. *See Abdulhaseeb v. Ward*, 173 F. App'x 658, 669 n.1 (10th Cir. 2006) (stating that habeas petitions under 28 U.S.C. § 2241 are used to attack the execution of a sentence, including prison disciplinary matters).

It is unclear whether Plaintiff intends to base his claim in Count III on the inspection of his letters to Corey Woodward; the censorship, meaning the refusal to process them for delivery; the resulting disciplinary proceedings; the controlling Kansas administrative regulations; or some combination thereof. Each type of claim—unconstitutional inspection, unconstitutional refusal to process outgoing mail for delivery, unconstitutional disciplinary proceedings, unconstitutional regulations—requires different analysis. Plaintiff should make clear in his amended complaint precisely which acts by which named Defendant form the basis for his claim or claims in this action related to the letters to Corey Woodward.

### IV. Amended Complaint Required

As explained above, the complaint now before the Court contains misjoined claims and parties, which are subject to being severed by this Court, and it suffers additional deficiencies that leave at least portions of it subject to dismissal. Thus, Plaintiff will be granted the opportunity to file a complete and proper amended complaint upon court-approved forms that cures these deficiencies. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. The amended complaint is not simply a supplement to the original complaint; instead, it completely replaces the original complaint. Therefore, any claims or allegations not included in the amended complaint will no longer be before the Court. In other words, Plaintiff may not simply refer in the amended complaint to his earlier complaint or the attachments thereto. The amended complaint must contain all allegations and claims that Plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (25-3110-JWL) at the top of the first page of the amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff must also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege specific facts describing the unconstitutional acts taken by each defendant, including dates, locations, and circumstances. Although Plaintiff may attach additional pages to the form complaint if necessary, he should not use the form merely to refer the Court to attached pages and he should clearly label the additional pages to indicate which portion of the form is being supplemented. If Plaintiff does not file within the prescribed time an amended complaint that cures the deficiencies discussed herein, this matter or portions of it may be dismissed or severed without further prior notice to Plaintiff.

## V. Pending Motions

### A. "Motion to Amend Complaint" (Doc. 4)

Because Plaintiff is required to file an amended complaint in this matter, his motion to amend (Doc. 4) is largely moot and will be denied as moot. Plaintiff may name additional Defendants and allege additional relevant facts as necessary in the amended complaint. To the extent that the motion to amend seeks to join Corey Woodward as a plaintiff in this action, the motion (Doc. 4) will be denied for the reasons stated above.

### B. "Motion for Court Orders" (Doc. 5)

The request in Plaintiff's "Motion for Court Orders" (Doc. 5) that this Court direct LCF staff to treat mail between Plaintiff and Corey Woodward as privileged due to their attorney-client relationship will be denied for the reasons set forth above. The "Motion for Court Orders" also requests an order directing the LCF Business Office to submit payment of the filing fee. *Id.* at 2. Because payment has been received, the request is moot and will be denied as moot. Finally, the motion appears to provide additional information not contained in the complaint regarding additional correspondence Plaintiff attempted to mail to Corey Woodward. If Plaintiff chooses to file an amended complaint in this matter that includes what is now Count III, he may include this additional information. Thus, the motion (Doc. 5) will be denied.

### C. "Motion Confirming Memorandum Filing" (Doc. 6)

Plaintiff filed his "Motion Confirming Memorandum Filing" after he realized that the initial submission to the Court of the memorandum in support did not contain all of the pages he intended to file. (Doc. 6, p. 1.) This motion sought to ensure that the Court has a complete copy of Plaintiff's memorandum in support of his complaint and, in support of that effort, Plaintiff attached

to the motion a complete copy of the memorandum and relevant exhibits. (Doc. 6; Doc. 6-1.) As seen above, the Court has considered the full memorandum and the exhibits thereto, as filed at Doc. 6-1, while conducting the initial screening of this matter. Thus, the motion for confirmation (Doc. 6) will be denied as moot.

Plaintiff is cautioned, however, that he should not rely on the memorandum filed at Doc. 6-1 to support any amended complaint. If Plaintiff wishes to submit a memorandum in support of the properly joined claims against properly joined parties identified in an amended complaint, he may do so. He must ensure that all relevant information for this Court to consider during the screening of the amended complaint is contained within the amended complaint itself and any attachments to the amended complaint.

**IT IS THEREFORE ORDERED BY THE COURT** that the motion to amend complaint (Doc. 4), the motion for court orders (Doc. 5), and the motion confirming memorandum filing (Doc. 6) are **denied** for the reasons stated in this order.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **August 11, 2025,** in which to file a complete and proper amended complaint that cures the deficiencies discussed herein. The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated July 7, 2025, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**