# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAVID L. WOODWARD,**<br>   **Plaintiff,**<br><br>   v.<br>**JEFF ZMUDA, et al.**<br>   **Defendants.** | )<br>)<br>)<br>)      CASE NO. 25-03110-JWL<br>)<br>)<br>) |

## AFFIDAVIT OF JENNIFER CROUSE

I, Jennifer Crouse, being of lawful age, make the following declaration pursuant to 28 U.S.C. § 1746 relating to the captioned matter based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment.

1. My name is Jennifer Crouse, an Administrative Assistant for the Kansas Department of Corrections (KDOC) out of Lansing Correctional Facility (LCF) in Lansing, Kansas.

2. I have been employed in the above capacity since September 2024. I have been employed with KDOC since September 2024.

3. As part of my duties, I am to process incoming and outgoing mail in accordance with K.A.R. 44-12-601 and K.A.R. 44-12-313 and KDOC Internal Management Policy and Procedures (IMPP) such as IMPP 12-139D, IMPP 12-134A, and IMPP 12-127D to ensure the necessary management and safety of the facility.

4. The matters stated in this affidavit are based on my personal knowledge and review of the mailroom records of inmate, David L. Woodward, 0055044, as maintained by KDOC as my knowledge the applicable Kansas Administrative Regulations and KDOC IMPPs.

5. I am familiar with the retention of censorship records and procedures by KDOC. I am familiar with the records and notes for mailroom procedures of this kind, including censors to residents as well as censors sent to publishers at or near the time of publication receipt by the mailroom, and have knowledge they were made and kept during the regularly conducted business activity by KDOC. These records were made in the ordinary

course of mailroom processing of residents in custody mail. It is a regular business activity of KDOC to make and keep such records. I am relying on my personal recollection and the information contained within the censorship forms and replies in accordance with standard operations of my position.

6. I am aware Mr. Woodward has launched complaints regarding his time at Lansing Correctional Facility (LCF) where he presently remains for the handling of his incoming and outgoing mail.
7. I am aware that Mr. Woodward has made a complaint against KDOC, myself, and other staff of KDOC for issues surrounding his mail being censored.
8. Around the first week of May 2025, I became aware mailroom staff were censoring mail for Mr. Woodward. These censors were for any publications containing images of children. I was tasked with reviewing the magazines/publications Mr. Woodward has been receiving to determine if any are not in compliance with the applicable K.A.R.s, IMPPs, or procedures pertaining to the management of Mr. Woodward and to notify him and the publishers of the censorship if any publications are censored.
9. During this time, I reviewed the incoming magazines/publications and found several magazines/publications had to be censored in accordance with the applicable regulations and policies/procedures. I reviewed Mr. Woodward's publications as they came in and made determinations of censorship on a case-by-case basis for each individual publication received.
10. Upon review of Mr. Woodward's censorship records, I located many censorships for publications mailed to him during his time at LCF to present (present being the date of signature of this declaration). This number is likely to increase as we are still receiving magazines and publications every day still in violation of the regulations and IMPPS.
11. For these censorship records mentioned above, the majority have been censored due to the publications containing depictions of children under the age of 18 years of age. Mr. Woodward's materials were censored in accordance with the language set out in K.A.R. 44-12-601 and K.A.R. 44-12-313. This is because Mr. Woodward is managed as a sex offender and has no overrides. Since he is managed as a sex offender without overrides, he is not allowed to possess images of children or have communications with them.

12. Others were also censored for both the content as well as having come from an unapproved vendor per IMPP 12-127D which poses a threat to the safety, order and security of the facility under K.A.R. 44-12-601(d). Two publications were recently censored only for having not come from an approved vendor per IMPP 12-127D, however, if Mr. Woodward sends a request to the Chaplain and Warden for approval to add the vendors on the list and gets approval them then receiving these publications (without any other foreseeable issues) should be able to get those two publications.

13. Publications coming from a non-approved vendor can cause many safety and security concerns for those in the facility as that have been prior instances of unauthorized vendors attempting to mail in drug-soaked papers and aid in unlawful communications. While those are not the only two things that can happen, the attempts are prevalent, and the consequences are extremely harmful.

14. When I censor a resident's incoming mail, I issue a notice to both the resident and the provider in accordance with K.A.R. 44-12-601 and K.A.R. 44-12-313 and KDOC Internal Management Policy and Procedures (IMPP) such as IMPP 12-139D, IMPP 12-134A and IMPP 12-127D. The notice that is sent to the publisher is usually a copy of the notice that was sent to the resident.

15. There are some occasions where a publication does not have an address in which I can mail a notice of censorship, I do my best to investigate online for an address that would be sufficient but there are times when nothing can be found, and a censor is not sent to a publisher.

16. For this case, I provided a notice of censorship for each publication to Mr. Woodward. I attempted to provide a copy of such to as many of the publishers as I could. The LCF mailroom only retains documentation on the notices of censorship sent to the residents; there is no log or documentation on the notices of censorship that were sent to the publishers so the information of this is based purely from my memory.

17. Regarding the issue of censoring publications to Mr. Woodward for the publications containing depictions of persons under the age of 18 years of age, the mailroom did receive a letter from the publisher of "Under Lock & Key" on or about July 3, 2025. This is in objection to the censorship of Issue 89 of their publication to Mr. Woodward that was rendered on June 2, 2025.

18. I do not recall whether a censorship notice was issued or if I was unable to find a proper address to mail the notice. I do recall that the publication was censored for containing a drawing of an infant child within its contents and censoring it on that basis. Unfortunately, at that time the notice of censorship forms had not been updated to reflect this, so it was marked as censorship for communications with a person under the age of 18 by an incarcerated person not allowed to have such access. However, the intention was for the depiction of the infant child.
19. Copies of the censorship notices and any retained publications in the mailroom's possession in relation to this issue have been provided to KDOC legal counsel for secured production to the Court for this case. A copy of the complaint by the publisher of "Under Lock & Key" has also been provided to KDOC legal counsel for secured production to the Court pursuant to this case.
20. It should be noted that other earlier notices of mail censorship forms did designate that Mr. Woodward's mail was being censored as it was a threat to the safety and security of public officials and/or the general public stating it was "unauthorized correspondence with a person under the age of 18 years old" per KAR 44-12-601. While it still accurately fell under K.A.R. 44-12-601 and the applicable IMPPs, the censorship form was eventually updated with the language that it was being censored for "containing images of a person under the age of 18 years of age." This was done to provide a more explicit description of the material being censored to further limit any question of ambiguity.
21. However, at minimum, Mr. Woodward already had notice of this specific reason since the beginning as he had been put on notice of such on or about May 13, 2025, from CM II Darcie Holthaus, as she sent him a letter stating the reasons for the censorships. I am aware of this letter as Ms. Holthaus has notified the mailroom as well.
22. Additionally, I am aware Mr. Woodward had previously used such publications/materials to create sexually explicit material in violation of Kansas regulations and KDOC policies and procedures such as the ones mentioned above, which creates a continuous serious threat to the safety and security of the facility as well as hindering the furtherance of his rehabilitation while in KDOC's care.
23. I am aware he was given a disciplinary report for having abused his use of the magazines/publications to create sexually explicit material as recently as April of this year. This is because the mailroom was notified of the incident so protective measures

could be put into place to aid in the prevention of future incidents and further safety and security of the facility regarding incoming publications.

24. Other protective measures are the mailroom can implement are things such as placing a resident on "readable mail" status. When a resident is on "readable mail" status, all outgoing and incoming mail for the resident is to be reviewed by agents in the EAI office. When a resident is not on "readable mail" status, their outgoing mail can still be reviewed randomly by mailroom staff while all incoming mail is reviewed prior to being copied and distributed to the resident thereafter. This is being done to ensure the continued safety and security of the facility.

25. The mailroom received two letters on or about May 22, 2025, in the outgoing mail addressed by David Woodward as the sender and Corey Woodward as the intended recipient. These letters explained in graphic detail sexual fantasies of adult males having sex with female children. These letters were promptly turned over to the EAI agents of LCF as evidence of his recent behavior and violation of KDOC's IMPPs and applicable K.A.R.s.

26. Since then, Mr. Woodward has been placed on "readable mail" status.

27. It is my understanding Mr. Woodward received a guilty conviction for the disciplinary report he was given for this May 2025 violation.

28. I do not personally know or have met Mr. Woodward. My interactions with Mr. Woodword regarding these matters are limited to the formal written censorship process. The information provided herein is done so within the scope of the duties of my position of employment with KDOC at LCF and not in any personal or non-business capacity.

Pursuant to 28 U.S.C. § 1746, the above statements are true and based upon my personal knowledge to which I am competent to testify at trial. I declare, certify, verify, and state under penalty of perjury under the laws of the United States the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT

_____                                    9/18/25

Jennifer Crouse, Administrative Assistant	Date
Kansas Department of Corrections