# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID L. WOODWARD,<br>　　　Plaintiff,<br><br>　　　v.<br>JEFF ZMUDA, et al.<br>　　　Defendants. | )<br>)<br>)<br>)　CASE NO. 25-03110-JWL<br>)<br>)<br>) |

## AFFIDAVIT OF DARCIE HOLTHAUS

I, Darcie Holthaus, being of lawful age, make the following declaration pursuant to 28 U.S.C. § 1746 relating to the captioned matter based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment.

1. My name is Darcie Holthaus, a Corrections Manager II for the Kansas Department of Corrections (KDOC) out of central office in Topeka, Kansas.
2. I have been employed in the above capacity since April 8, 2021. I have been employed with KDOC since March 2, 2020.
3. As part of my duties, I act as the designee for the Secretary of Corrections for the purpose of reviewing inmate censorship appeals and complaints to the Secretary of Corrections from all correctional facilities statewide.
4. The matters stated in this affidavit are based on my personal knowledge and review of the records of offender, David L. Woodward, 0125871, as maintained by the Kansas Department of Corrections (KDOC).
5. I am familiar with the retention of censorship records by KDOC. The records and notes for, including censors appeals at or near the time of notification of publication censorship from receipt by the mailroom with knowledge and were made and kept during the regularly conducted business activity by KDOC. These records were made in the ordinary course of mailroom processing of residents in custody mail. It is a regular business

activity of KDOC to make and keep such records. I am relying on my personal recollection and the information contained within the censorship forms and replies in accordance with standard operations of my position.

6. The documentation of such is commonly retained KDOC's DocuWare imaging platform after the censorship has been fully appealed through to the Secretary of Corrections.
7. I am aware that Mr. Woodward has made a complaint against KDOC, myself, and other staff of KDOC for issues surrounding his mail while incarcerated.
8. I am aware Mr. Woodward has made these complaints while housed at Lansing Correctional Facility (LCF) where he presently remains.
9. Upon review of Mr. Woodward's censorship records, I located several censorship appeals for publications mailed to him during his time with KDOC within the KDOC database. The censorship appeals pertain to censorships based on Mr. Woodward being managed as a sexual offender with no overrides and the content of the publication containing material he cannot possess due to his management status. Particularly involving children or sexually explicit material.
10. Residents that are managed as sex offenders with no overrides, are limited in what they can and cannot possess within a facility. These limitations are things like images of children because it is counter productive to their rehabilitation and can jeopardize the safety and security of the prison.
11. In this particular case, the victims of Mr. Woodward were children. Allowing him to possess images of children and/or short stories about raping children is counterproductive to his rehabilitation and can leave him still dangerous to the public if released on parole. Possession of images of children or short stories detailing sexually explicit acts against child victims would harm the living victim and remaining families if they knew he was being enabled while incarcerated. Additionally, it is a safety and security concern for those housed and working at the facility as most others do not want to see or be involved in such actives and can be sued as an excuse to continue to bring or provide contraband to others housed within the facility.

12. Regarding Mr. Woodward's appeals of the censors, KDOC inmate censorship records show Mr. Woodward has been appealing censorships of this nature as far back as 2014 to present.

13. In Mr. Woodward's file there are at least thirty censorship appeals within it; it is likely more will be added is it is an ongoing process that is done for each publication/magazine that comes into the facility in accordance with K.A.R. 44-12-601, K.A.R. 44-12-313 and Internal Management Policy and Procedures (IMPP) 12-139D. Residents are to appeal within fifteen (15) days as detailed at the bottom of the appeal page. After it is appealed, it is to be received by the Secretary of Corrections or his designee for review and final disposition. Once final disposition is rendered, a copy is given to the resident.

14. As the acting designee of the Secretary of Corrections, for the appeals from 2025, I responded to each as indicated on the appeal forms. All his protests for this specific issue have been denied. Any appeals prior to 2021 would have been completed by the then acting designees for the then acting Secretary of Corrections but have been included as they are appeals for censorship of publications for containing images of persons under the age of 18 which Mr. Woodward could not possess for still having been managed as a sex offender with no overrides.

15. Additionally, there are very few appeals to the Secretary of Corrections regarding censorship of suspected religious materials that have been fully appealed.

16. There are two appeals that appear to be as recent as of August 2025 and were censored on the basis they did not come from an approved vendor per IMPP 12-127D. Looking through Mr. Woodward's file, these are the most recent instances of any kind of censorship of a suspected religious material.

17. The purpose of having approved vendors for which publications can come from is to prevent the ever-increasing amount of contraband from entering the facilities. Whether the contraband be sexual in nature or drug-soaked paper, it is harmful to those living and working within the facilities and poses a real and substantial threat to people's lives.

18. Thankfully, Mr. Woodward can easily follow the procedure set out in IMPP 12-127D to have religious publications approved so they are not censored. Mr. Woodward just needs to send a request to the LCF chaplain and Warden for approval of the religious publisher

to be placed on the approved vendor's list so he may continue to receive those kinds of publications.

19. Copies of these records KDOC has on the censorship appeals have been provided to KDOC legal counsel for secured production to the Court for its review. These records are identified as the Censorship Notices and Appeals for David L. Woodward #0055044 (Exhibit 7).

20. As the current Designee of Secretary of Corrections regarding mail censorships, I first communicated with Mr. Woodward regarding his censorships on this particular basis on or about May 13, 2025. I did this in a letter in response to multiple recent appeals I received from him about having had magazines and publications censored for containing images of persons under the age of 18 years of age. I detailed in my letter that the publications are being censored for such reasons in addition to his abuses of the publications as shown in a recent disciplinary report from April 2, 2025, and since he is managed as a sex offender with no overrides.

21. A copy of my letter has been provided to KDOC legal counsel, it is titled "2025 Response to Censor" and attached hereto as Exhibit 5.

22. My letter in response to the beginning of the appeals of censorships to Mr. Woodward was created to further detail the reason for the censorship and denial of his appeal for the possession of images of children by a sex offender without any overrides. The then form for the censorships only had a box that described this as being censored as "communication" between the offender and a person under the age of 18, my letter is to further explain that the exact communication that is not approved is the receipt of images of children to this resident as he is not permitted to have such.

23. Eventually the form was updated to better detail this instance so there was no question of what the issue is with the publication and reason for censorship.

24. I also act as the designee for the Secretary of Corrections for the purpose of reviewing inmate grievances and complaints to the Secretary of Corrections from all correctional facilities statewide and for receiving emergency grievances filed by inmate to determine if an emergency exists needing immediate action.

25. I am familiar with the retention of grievance records by KDOC. The records and notes for, including appeals and grievances from residents as well as staff replies to the

grievances made at or near the time of entry by a person with knowledge and were made and kept during the regularly conducted business activity by KDOC. These records were made in the ordinary course of the intake of appeals and grievances from residents in custody. It is a regular business activity of KDOC to make and keep such records. I am relying on my personal recollection and the information contained within the censorship appeals and/or grievance(s) and replies in accordance with standard operations of my position.

26. Upon my search of his grievance records, I located the following records of the following relevant grievances: two unnumbered grievances from 2014 and Grievance #20079.

27. The first unnumbered grievance took place on or about July 2014, in which Mr. Woodward is objecting to having three books censored by the El Dorado Correctional Facility mailroom for containing images of children and since he is managed as a sex offender with no overrides was prevented from possessing the books. This is attached hereto as Exhibit 9.

28. Based on the documentation of the July 2014 unnumbered grievance, Mr. Woodward did not follow the correct/applicable grievance procedure.

29. The second unnumbered grievance took place on or about August 2014, which is a reiteration of his dissatisfaction with the outcome of his unnumbered July 2014 grievance and disposition of the censorship appeal from July 2014.

30. The last relevant grievance I found was from on or about June 16, 2016, at El Dorado Correctional Facility, where Mr. Woodward is complaining that the facility is introducing contraband for having magazines and newspapers at the facility library that sex offenders could potentially get access to as well as "challenging" IMPP 11-115A which further

defined sexually explicit material residents couldn't possess. This resulted in a response from both the then Warden and Designated Secretary of Corrections.

31. I do not personally know or have met Mr. Woodward. The information provided herein is done so within the scope of the duties of my position of employment with KDOC and in any personal or non-business capacity.

Pursuant to 28 U.S.C. § 1746, the above statements are true and based upon my personal knowledge to which I am competent to testify at trial. I declare, certify, verify, and state under penalty of perjury under the laws of the United States the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT

_____          09-17-25
Darcie Holthaus, Corrections Manager II        Date
Kansas Department of Corrections