IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID L. WOODWARD,

       Plaintiff,

       v.                                CASE NO.  25-3110-JWL

JEFF ZMUDA, et al.,

       Defendants.


## MEMORANDUM AND ORDER TO SHOW CAUSE

This matter is a civil rights action filed under 42 U.S.C. § 1983 by Plaintiff and state prisoner David L. Woodward, who is currently incarcerated at Lansing Correctional Facility (LCF) in Lansing, Kansas. Plaintiff filed his initial complaint on June 5, 2025, and, after he paid the filing fee on June 27, 2025, the Court conducted the statutorily required initial screening of the complaint. On July 7, 2025, the Court issued a memorandum and order identifying certain deficiencies in the complaint and granting Plaintiff time to file an amended complaint that cured those deficiencies. (Doc. 7.) Plaintiff timely filed his amended complaint (Doc. 8) and a memorandum in support of his amended complaint (Doc. 9), which the Court reviewed.

On July 18, 2025, the Court entered a second memorandum and order (the M&O) directing Kansas Department of Corrections (KDOC) officials to prepare and submit a *Martinez* report. (Doc. 10.) The M&O provided:  "Upon the filing of that Report, the Court will screen Plaintiff's amended complaint and will issue further orders as appropriate." *Id.* at 2. The *Martinez* report (Doc. 12) was filed on September 18, 2025, and submission to the Court of the exhibits to the *Martinez* Report was completed on October 9, 2025. (*See* Docs. 22 and 23.) The Court has screened the amended complaint in light of the *Martinez* report and will direct Plaintiff to show cause, in

writing, why Defendant Zmuda should not be dismissed from this matter and why Ground Three of this matter should not be dismissed for failure to state a claim upon which relief can be granted.

## I.  Nature of the Matter before the Court

In the amended complaint, Plaintiff names as Defendants Kanas Secretary of Corrections Jeff Zmuda; former LCF Warden Jesse Howes; LCF mail clerk J. Crouse; KDOC CM II Darcie Holthaus; and LCF ISA Leslie West.  (Doc. 8, p. 1-3.) As the factual background for this action, Plaintiff alleges that on April 1, 2025, delivery of all magazines—including religious materials—to Plaintiff stopped. *Id.* at 2. Plaintiff further alleges that his incoming and outgoing mail is being censored and he "is being deprived of story writing." *Id.*

In Count I of the amended complaint, Plaintiff asserts the violation of the First Amendment rights to access information and to exercise his religion. *Id.* at 4. As supporting facts for Count I, Plaintiff alleges that after LCF ceased delivering magazines to him on April 1, 2025, he asked an LCF Unit Team Supervisor why he was no longer receiving his magazines. *Id.* She replied that Defendant Howes, who was the LCF warden at the time, and Defendant Holthaus had permanently suspended delivery of all publications to Plaintiff. *Id.* On May 3, 2025, Plaintiff began receiving mail censorship notices for publications that came to him. *Id.* at 5.

The notices, which were issued by Defendant Crouse, stated that the publications were a threat to either public officials or the general public and/or that Plaintiff was engaging in unauthorized correspondence with persons under 18 years old. *Id.* Later notices stated that delivery was denied because the publications contained pictures or images of persons under 18 years old. *Id.* Plaintiff protested the censorship by mail to Defendant Zmuda, but his protests were denied and the delivery of publications has not resumed. *Id.* at 5.

In Count II, Plaintiff asserts the violation of his right to correspond by mail with individuals outside of LCF, as guaranteed by the First and Fourteenth Amendments. *Id.* at 4. As supporting facts for Count II, Plaintiff alleges that on May 23, 2025, two letters addressed to his son, Corey Woodward, were censored and not processed into outgoing mail to be delivered to Corey Woodward. *Id.* at 4, 6. Plaintiff assumes that Defendant Crouse opened the letters. *Id.* at 4. Plaintiff further alleges that up to six additional letters he placed into outgoing mail have been intercepted and not mailed, whereas prior to May 23, 2025, his outgoing letters were mailed without difficulty. *Id.* at 4-5. Plaintiff believes that all of his outgoing mail is "being stopped"; he bases this belief in part on the continuing efforts of publishers to mail material to him despite Plaintiff's mailings to those publishers stating that LCF was refusing to deliver the material to Plaintiff. *Id.* at 5.

In Count III, Plaintiff asserts the violation of his First Amendment right to free speech. *Id.* at 7. As supporting facts for Count III, Plaintiff points to the two letters to Corey Woodward that were opened on May 23, 2025 by Defendant Crouse. *Id.* The letters included "partial stories." *Id.* Plaintiff alleges that he has not received the required notice of censorship that states the reason his mail is being censored. *Id.* at 6. He also alleges that he received a disciplinary report based on the content of the stories in his letters to Corey Woodward and he believes that any future stories he writes will be subject to censorship and seizure and may result in punishment of Plaintiff. *Id.* Plaintiff asserts that Defendant West is the individual seizing the letters. *Id.* Thus, Plaintiff asserts, he essentially "is prohibited from writing fictional stories of his choice." *Id.*

As relief in this matter, Plaintiff seeks an order directing LCF to resume delivery to him of all publications, magazines, and religious materials; enjoining LCF from preventing Plaintiff's outgoing mail from reaching the postal service; and directing LCF to allow Plaintiff to exercise

his constitutional rights to free speech and freedom of expression without sanctions or punishment. *Id.* at 8.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss "the complaint, or any portion of the complaint," that "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must

4

be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

When, as here, the Court orders a *Martinez* report to assist with the screening process, the *Martinez* report "is treated like an affidavit, and the Court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall*,

935 F.2d at 1111 (citation omitted). Rather, "[t]he purpose of the Martinez report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims." *Gee v.* Estes, 829 F.2d 1005, 1007 (10th Cir. 1987). In other words, "[i]n determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes." *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993). Thus, although the Court may consider the *Martinez* report to aid it "in fleshing out possible legal bases of relief" when the Court screens a case under 28 U.S.C. § 1915A(b)(1)-(2), it will not consider the *Martinez* report "to resolve material factual issues." *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

## III. DISCUSSION

### A. Defendant Zmuda

Defendant Zmuda is subject to dismissal from this action because even liberally construed, the operative amended complaint does not allege the type of direct personal participation by Defendant Zmuda required to state a plausible claim for relief against him. As previously explained to Plaintiff:

> An essential element of a civil rights claim under § 1983 against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). A viable § 1983 claim must establish that each defendant caused a violation of Plaintiff's constitutional rights. *See Walker v. Johiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). As a result, Plaintiff must not only name each defendant in the caption of the complaint, he must do so again in the body of the complaint and include in the body a description of the acts taken by each defendant that violated Plaintiff's federal constitutional rights.

(Doc. 7, p. 12-13.)

The only allegations regarding Defendant Zmuda in the operative amended complaint are that he is the Kansas Secretary of Corrections, he "deprived plaintiff of publications by censorship

6

of same in violation of the [First] Amendment," and that Plaintiff "mailed protests for this censorship" to Defendant Zmuda, all of which were denied. (Doc. 8, p. 1, 5.) An allegation that an official denied or failed to respond to a grievance is not enough to show the personal participation required for a plausible claim under § 1983. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). The Court previously has applied this rationale to censorship protests. *See Meredith v. Roberts*, 2012 WL 1380330, *1, 3-4 (D. Kan. April 20, 2012) (unpublished) (holding that complaint alleging secretary of corrections denied censorship protests did not sufficiently allege the secretary's direct personal participation in an alleged constitutional violation).

The Court sees no reason to divert from this well-established path. Plaintiff's allegations that he submitted protests to Defendant Zmuda and that Defendant Zmuda denied those protests are not sufficient, even when liberally construed and taken as true, to show Defendant Zmuda's direct personal participation in the violation of Plaintiff's First Amendment rights. Therefore, Plaintiff has failed to state a plausible claim against Defendant Zmuda and Defendant Zmuda is subject to dismissal from this action.

### B. Counts I and II

The Court finds that Counts I and II, as pled in the operative amended complaint, survive the statutorily required screening of the amended complaint. This finding should not be interpreted as an indication that these claims are likely to succeed. Rather, the Court finds that—other than the inclusion of Defendant Zmuda, which is discussed above—Counts I and II of this matter are not frivolous or malicious, they state a plausible claim for relief, and they do not seek monetary relief from immune defendants. *See* 28 U.S.C. § 1915A(b)(1)-(2).

**C. Count III**

Count III is subject to dismissal because it fails to state a plausible claim for relief.[1] As noted above, Count III asserts the violation of Plaintiff's First Amendment right to free speech, based on the seizure of letters Plaintiff wrote to his son and placed in the outgoing mail in May 2025. (Doc. 8, p. 6-7.) The letters, which were submitted by the KDOC as sealed exhibits to the *Martinez* Report, contain graphic descriptions of the repeated rape of a six-year-old child. (Doc. 19-2.) Plaintiff received a disciplinary report based on the content of the stories and he asserts in Count III that he is now "prohibited from writing fictional stories of his choice." (Doc. 8, p. 6.) This assertion is overly broad and not supported by specific alleged facts. Rather, the facts alleged in the complaint, when supplemented by the *Martinez* Report and its exhibits, reflect that Plaintiff is prohibited from writing fictional stories that describe the rape of children. Plaintiff asserts in Count III that this prohibition violates his First Amendment right to free speech.

As the Supreme Court recognized in 1974:

> [A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

*Pell v. Procunier*, 417 U.S. 817, 822 (1974).

Nearly 13 years later, the Supreme Court clarified that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This "standard is necessary" to ensure that "prison administrators . . . , and not the courts, . . . make the difficult judgments

---

[1] As previously explained to Plaintiff, to the extent that he intends in Count III to argue that his disciplinary conviction violated his First Amendment rights, any such argument must be dismissed because Plaintiff has not shown that the disciplinary conviction or any resulting punishment has been invalidated. (*See* Doc. 7, p. 20.)

concerning institutional operations." *Id.* (quoting *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 128 (1977)). "'[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Id.* at 84 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1074)). Moreover, the task of prison administration has been committed to the executive and legislative branches of government, so "separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." *Id.* at 85.

The Supreme Court has identified several factors relevant to determining the reasonableness of the prison restriction that allegedly violates the First Amendment, which are referred to as "the *Turner* factors." *See Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012). The *Turner* factors are:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Al-Owhali*, 687 F.3d at 1240 (quoting *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002)). The first factor is an essential requirement, "'not simply a consideration to be weighed'" against the other factors. *Id.* (quoting *Boles v. Neet*, 486 F.3d 1177, 1181 (10th Cir. 2007)).

In the context of the initial screening of a prisoner's § 1983 complaint, the Court does not require a plaintiff to fully plead or argue the *Turner* factors. *Id.* at 1240 n.2. But "*Iqbal and Turner* require an inmate to 'plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.'" *Id.* at 1240 (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010)). Although Plaintiff need not "identify every potential legitimate interest and plead against it[,]' . . . he is required to 'recite[] facts that might well be

unnecessary in other contexts.'" *Id.* (quoting *Gee*, 627 F.3d at 1187).

K.A.R. 44-12-313(a) prohibits Kansas inmates from having "in [their] possession or under [their] control any sexually explicit materials, including . . . writing . . . ." Subsection (b) of the regulation defines when material is considered sexually explicit and includes material that "contains any . . . description of . . . [s]exual intercourse . . . ." K.A.R. 44-12-313(b). Even liberally construing the amended complaint and taking all well-pleaded facts therein as true, the Court cannot draw a plausible inference that no legitimate penological interest is reasonably related to the prohibition against Plaintiff, who is serving a sentence imposed for convictions of sex crimes involving minors[2], writing stories that describe raping a child. In other words, Plaintiff has failed in the amended complaint to allege facts that, if taken as true, support the plausible inference that the restriction he challenges in Count III is not reasonably related to a legitimate penological interest. Thus, Count III fails to state a claim on which relief can be granted.

## IV.  Response Required

Plaintiff is required to show good cause why Defendant Zmuda and Count III of the amended complaint should not be dismissed for failure to state a claim on which relief can be granted, as explained above. If Plaintiff does not timely file a written response to this order, Defendant Zmuda and Count III of this matter will be dismissed without further prior notice to Plaintiff and the Court will issue orders regarding service on the remaining Defendants. If Plaintiff does not wish to contest the dismissal of Defendant Zmuda or Count III from this matter, he may so inform the Court in writing and the Court will issue further orders as necessary.

---

[2] Plaintiff is a convicted sex offender who, in 1991, "pled guilty to the felony murder of a 5-year-old child, A.S.[,]" and "pled guilty to kidnapping, two counts of sexual exploitation of a child, rape, and indecent liberties with a child in connection with the sexual molestation of a different child." *State v. Woodward*, 2023 WL 8868564, *1 (Kan. Ct. App. Dec. 22, 2023) (unpublished), *rev. denied* May 22, 2025; *see also Woodward v. Cline*, 2012 WL 2178855 (D. Kan. June 14, 2012) (unpublished).

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **November 24, 2025,** in which to show good cause, in writing to the undersigned, why Count III of this matter and Defendant Zmuda should not be dismissed without prejudice for the reasons stated in this order.

**IT IS SO ORDERED**.

Dated October 23, 2025, in Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE