IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID L. WOODWARD,

    **Plaintiff,**

    v.                         CASE NO. 25-3110-JWL

JEFF ZMUDA, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff and Kansas prisoner David L. Woodward brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Lansing Correctional Facility (LCF) in Lansing, Kansas and he has paid the required filing fee. This matter comes now before the Court on Plaintiff's response (Doc. 28) to the Court's memorandum and order to show cause ("MOSC") issued on October 23, 2025. (Doc. 27.) For the reasons set forth below, the Court will dismiss Defendant Zmuda from this matter and will dismiss Count III. Plaintiff will be granted time in which to file a supplement to Counts I and II of his complaint that complies with Federal Rule of Civil Procedure 15(d).

In addition, Plaintiff will be granted time in which he may move to file a second amended complaint. If Plaintiff files a motion for leave to file a second amended complaint, the Court will review the proposed second amended complaint and will issue further orders as necessary. If Plaintiff does not file a proper motion for leave to file a second amended complaint on or before the deadline set in this order, this Court will order service on the remaining Defendants of the currently operative amended complaint.

1

**I. Screening Standards**

Because Plaintiff is a prisoner, the Court is required by statute to screen his pleadings, such as the amended complaint, and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct,

much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, at 550 U.S. at 570).

**II. The Operative Amended Complaint (Doc. 8.)**

The controlling, or operative, pleading in this matter is the amended complaint filed on July 17, 2025. (Doc. 8.) Therein, Plaintiff names as Defendants Kansas Secretary of Corrections Jeff Zmuda; former LCF Warden Jesse Howes; LCF mail clerk J. Crouse; KDOC CM II Darcie Holthaus; and LCF ISA Leslie West. *Id.* at 1-3. As the factual background for this action, Plaintiff alleges that on April 1, 2025, delivery of all magazines—including religious materials—to Plaintiff stopped. *Id.* at 2. Plaintiff further alleges that his incoming and outgoing mail is being censored and he "is being deprived of story writing." *Id.*

In Count I of the amended complaint, Plaintiff asserts the violation of the First Amendment rights to access information and to exercise his religion. *Id.* at 4. As supporting facts for Count I, Plaintiff alleges that after LCF ceased delivering magazines to him on April 1, 2025, he asked an LCF Unit Team Supervisor why he was no longer receiving his magazines. *Id.* She replied that Defendant Howes, who was the LCF warden at the time, and Defendant Holthaus had permanently suspended delivery of all publications to Plaintiff. *Id.* On May 3, 2025, Plaintiff began receiving mail censorship notices for publications that came to him. *Id.* at 5.

The notices, which were issued by Defendant Crouse, stated that the publications were a threat to either public officials or the general public and/or that Plaintiff was engaging in unauthorized correspondence with persons under 18 years old. *Id.* Later notices stated that delivery was denied because the publications contained pictures or images of persons under 18 years old. *Id.* Plaintiff protested the censorship by mail to Defendant Zmuda, but his protests were denied and the delivery of publications has not resumed. *Id.* at 5.

3

In Count II, Plaintiff asserts the violation of his right to correspond by mail with individuals outside of LCF, as guaranteed by the First and Fourteenth Amendments. *Id.* at 4. As supporting facts for Count II, Plaintiff alleges that on May 23, 2025, two letters addressed to his son, Corey Woodward, were censored and not processed into outgoing mail to be delivered to Corey Woodward. *Id.* at 4, 6. Plaintiff assumes that Defendant Crouse opened the letters. *Id.* at 4. Plaintiff further alleges that up to six additional letters he placed into outgoing mail have been intercepted and not mailed, whereas prior to May 23, 2025, his outgoing letters were mailed without difficulty. *Id.* at 4-5. Plaintiff believes that all of his outgoing mail is "being stopped"; he bases this belief in part on the continuing efforts of publishers to mail material to him despite Plaintiff's mailings to those publishers stating that LCF was refusing to deliver the material to Plaintiff. *Id.* at 5.

In Count III, Plaintiff asserts the violation of his First Amendment right to free speech. *Id.* at 7. As supporting facts for Count III, Plaintiff points to the two letters to Corey Woodward that were opened on May 23, 2025 by Defendant Crouse. *Id.* The letters included "partial stories." *Id.* Plaintiff alleges that he has not received the required notice of censorship that states the reason his mail is being censored. *Id.* at 6. He also alleges that he received a disciplinary report based on the content of the stories in his letters to Corey Woodward and he believes that any future stories he writes will be subject to censorship and seizure and may result in punishment of Plaintiff. *Id.* Plaintiff asserts that Defendant West is the individual seizing the letters. *Id.* Thus, Plaintiff asserts, he essentially "is prohibited from writing fictional stories of his choice." *Id.*

As relief in this matter, Plaintiff seeks an order directing LCF to resume delivery to him of all publications, magazines, and religious materials; enjoining LCF from preventing Plaintiff's outgoing mail from reaching the postal service; and directing LCF to allow Plaintiff to exercise

4

his constitutional rights to free speech and freedom of expression without sanctions or punishment. *Id.* at 8.

### III. The *Martinez* Report (Doc. 12) and the October 23, 2025 MOSC (Doc. 27)

On July 18, 2025, the Court entered a memorandum and order ("M&O") directing Kansas Department of Corrections (KDOC) officials to prepare and submit a *Martinez* report. (Doc. 10.) The M&O provided: "Upon the filing of that Report, the Court will screen Plaintiff's amended complaint and will issue further orders as appropriate." *Id.* at 2. The *Martinez* report (Doc. 12) was filed on September 18, 2025, and submission to the Court of the exhibits to the *Martinez* Report was completed on October 9, 2025. (*See* Docs. 22 and 23.)

The Court reviewed the *Martinez* Report and the exhibits thereto and, on October 23, 2025, issued a memorandum and order to show cause ("MOSC") explaining that "Defendant Zmuda is subject to dismissal from this action because even liberally construed, the operative amended complaint does not allege the type of direct personal participation by Defendant Zmuda required to state a plausible claim for relief against him." (Doc. 27, p. 6.) After setting forth the controlling law, the MOSC stated:

> The only allegations regarding Defendant Zmuda in the operative amended complaint are that he is the Kansas Secretary of Corrections, he "deprived plaintiff of publications by censorship of same in violation of the [First] Amendment," and that Plaintiff "mailed protests for this censorship" to Defendant Zmuda, all of which were denied. (Doc. 8, p. 1, 5.) An allegation that an official denied or failed to respond to a grievance is not enough to show the personal participation required for a plausible claim under § 1983. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). The Court previously has applied this rationale to censorship protests. *See Meredith v. Roberts*, 2012 WL 1380330, *1, 3-4 (D. Kan. April 20, 2012) (unpublished) (holding that complaint alleging secretary of corrections denied censorship protests did not sufficiently allege the secretary's direct personal participation in an alleged constitutional violation).
>
> The Court sees no reason to divert from this well-established path. Plaintiff's allegations that he submitted protests to Defendant Zmuda and that Defendant Zmuda denied those protests are not sufficient, even when liberally

5

construed and taken as true, to show Defendant Zmuda's direct personal participation in the violation of Plaintiff's First Amendment rights. Therefore, Plaintiff has failed to state a plausible claim against Defendant Zmuda and Defendant Zmuda is subject to dismissal from this action.

*Id.* at 6-7.

The MOSC explained the Court's conclusion that "Counts I and II, as pled in the operative amended complaint, survive the statutorily required screening of the amended complaint." *Id.* at 7. With respect to Count III, however, the Court concluded that "Count III is subject to dismissal because it fails to state a plausible claim for relief." *Id.* at 8. The M&O set forth in detail the reasoning behind this finding. *Id.* at 8-10. The MOSC then directed Plaintiff to show good cause why Defendant Zmuda and Count III of the amended complaint should not be dismissed. *Id.* at 10. Plaintiff timely filed his response (Doc. 28) on November 4, 2025.

## IV. Discussion

As a threshold matter, Plaintiff devotes a significant portion of his response to contesting or otherwise arguing against the Court accepting the facts alleged in the *Martinez* Report. (*See,* Doc. 28, p. 20-30.) Plaintiff is assured that the Court has not improperly used the information in the *Martinez* Report or taken it as true when there is evidence to the contrary before the Court. When the Court orders a *Martinez* report to assist with the screening process, the *Martinez* report "is treated like an affidavit, and the Court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall*, 935 F.2d at 1111 (citation omitted).

"The purpose of the Martinez report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). In other words, "[i]n determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically

6

pled by a plaintiff, or to resolve factual disputes." *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993). Thus, although the Court may consider the *Martinez* report to aid it "in fleshing out possible legal bases of relief" when the Court screens a case under 28 U.S.C. § 1915A(b)(1)-(2), it has not considered the *Martinez* report "to resolve material factual issues." *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

Plaintiff contends in his response that he has stated sufficient involvement by Defendant Zmuda to state a plausible claim for relief against him. (Doc. 28, p. 1-3.) Plaintiff alleges that under *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008), he need not allege Defendant Zmuda's direct participation in a constitutional violation. *Id.* at 3. Plaintiff's reliance on *Buck* is misplaced.

*Buck* rejected a police captain's argument that he could not be found liable under § 1983 for the allegedly unconstitutional arrest of the plaintiffs because he did not personally arrest them. *Buck*, 549 F.3d at 1279. The Tenth Circuit noted that when the plaintiffs' allegations were taken as true, the captain was "at least on the scene directing, if not even more personally involved in" the arrest of at least one plaintiff. 549 F.3d at 1279-80. With respect to other plaintiffs, the Tenth Circuit concluded that the plaintiffs' factual allegations showed that the captain's "personal involvement was the catalyst of the chain of events leading to [the plaintiffs'] arrests," so the plaintiffs had shown sufficient personal involvement by the captain. *Id.* at 1275, 1279-80.

The case now before the Court does not contain alleged facts that support the same conclusions. Even taking all of Plaintiff's allegations in the operative amended complaint as true, he has not shown that Defendant Zmuda was personally involved in the decision to censor Plaintiff's mail. Plaintiff merely asserts that he protested the censorship to Defendant Zmuda, who denied his protests. (Doc. 8, p. 5.) In the response, Plaintiff reinforces this, stating: "Jeff Zmuda

was listed as a defendant since he has the power to grant the protest of censorship of plaintiff magazines as is noted on the protest side of the Mail Censorship Notices. Those protests have been denied for no further reason on the Notices." (Doc. 28, p. 1.)

As previously explained to Plaintiff, the Tenth Circuit held in *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009), which it issued after *Buck*, that an allegation that an official denied a grievance is not enough to show the personal participation required to state a plausible claim under § 1983. (*See* Doc. 27, p. 7.) *Buck* does not alter the Court's previous conclusion that Defendant Zmuda is subject to dismissal from this matter because Plaintiff has failed to sufficiently allege his direct personal participation in a constitutional violation.

Plaintiff's citation to *Kentucky v. Graham*, 473 U.S. 159 (1985), is similarly unpersuasive. (Doc. 28, p. 3.) As Plaintiff notes, the *Graham* Court stated: "On the merits, to establish *personal* liability in a 42 U.S.C. § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.*; *see Graham*, 473 U.S. at 166 (emphasis in original). As the MOSC explained, however, Plaintiff has not plausibly alleged that Defendant Zmuda *caused* a constitutional violation. To this end, Plaintiff now argues for the first time that Defendant Zmuda is a proper defendant in this matter based on his signing and implementing policies related to censorship. (*See* Doc. 28, p. 5-10.)

A plaintiff alleging supervisory liability of this type must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the

state of mind required to establish a violation of that provision." *Id.* at 1204. Plaintiff has not alleged facts supporting a plausible claim that Defendant Zmuda acted with the required state of mind to support supervisory liability.

The Court will not individually address the many other legal citations Plaintiff relies upon in his response to the MOSC. Plaintiff is assured, however, that the Court has carefully considered the cases and other authority Plaintiff cites in his response to support his arguments regarding the dismissal of Defendant Zmuda. (*See* Doc. 28, p. 1-10.) Specifically, the Court finds that Plaintiff has not pled facts that, when taken as true, plausibly support finding that Defendant Zmuda acted as a co-conspirator to deprive Plaintiff of a constitutional right. *See id.* at 4-5. Accordingly, the Court maintains its prior conclusion that Plaintiff has not stated a plausible claim for relief against Defendant Zmuda. Thus, Defendant Zmuda will be dismissed from this action.

Plaintiff also addresses in his response the Court's conclusion that Count III fails to state a plausible claim for relief. (Doc. 28, p. 10-19.) To the extent that Plaintiff characterizes Defendants' actions as attempts to police his thoughts, the Court is unmoved. Even liberally construing the facts pled in the operative amended complaint, there is no plausible claim that Defendants took any action based on Plaintiff's thoughts alone. Similarly, to the extent that Plaintiff questions whether the rights of others have been infringed, *see id.* at 19, Plaintiff has no standing to raise claims on behalf of other individuals. The Court has read and carefully considered Plaintiff's arguments in his response and, even in light of those arguments, finds that Count III of the operative amended complaint fails to state a plausible claim on which relief can be granted. Thus, Court III will be dismissed from this action.

Liberally construing the pro se response, Plaintiff appears to wish to supplement the amended complaint with additional information regarding events that have occurred since he filed

the amended complaint. (Doc. 28, p. 6-7.) He also expresses a desire to further amend the amended complaint to add defendants and claims. *Id.* at 36. Rule 15 of the Federal Rules of Civil Procedure governs amended and supplemental pleadings. Subsection (a)(1) of Rule 15 addresses a party's entitlement to amend his or her complaint once as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). But Plaintiff has already amended his complaint once, so Rule 15(a)(1) does not control.

Rule 15(a)(2) states: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Local Rule 15.1(a) sets forth the steps that a party must follow if he or she wishes to amend a pleading that may not be amended as a matter of right, which includes submitting a motion for leave to amend the pleading and attaching to that motion the proposed pleading. If Plaintiff wishes to amend the operative amended complaint in order to add Defendants or claims, he must file a proper motion to file a second amended complaint that complies with the requirements set forth in the local rules.

Similarly, Rule 15(d) of the Federal Rules of Civil Procedure governs supplemental pleadings and states:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). Thus, to the extent that Plaintiff wishes to supplement his amended complaint, he must file a motion to do so, also in compliance with Local Rule 15.1, which applies to any "party filing . . . a motion for leave to file a . . . document that may not be filed as a matter of right." *See* D. Kan. L.R. 15.1.

The Court will grant Plaintiff time in which to file a motion for leave to file a second amended complaint and/or a motion for leave to supplement his amended complaint. Plaintiff is cautioned, however, that any proposed supplement to the amended complaint that he files should not include claims against Defendant Zmuda or supplements to Count III of the amended complaint since this order dismisses those claims. Similarly, Plaintiff should not include in any proposed second amended complaint the claim identified as Count III in the amended complaint, nor should he name Jeff Zmuda as a Defendant unless the facts alleged in the proposed second amended complaint justify doing so.

As a reminder, if Plaintiff moves for leave to file a second amended complaint and the motion is granted, the second amended complaint will not simply supplement the currently operative amended complaint; instead, the second amended complaint will completely replace the amended complaint. Therefore, any claims or allegations not included in the second amended complaint will no longer be before the Court. In other words, Plaintiff may not simply refer in the second amended complaint to his earlier complaints or the attachments thereto. The second amended complaint must contain all allegations and claims that Plaintiff intends to pursue in the action, including those to be retained from the original or amended complaint.

Plaintiff must write the number of this case (25-3110-JWL) at the top of the first page of the proposed second amended complaint and he must name every defendant in the caption of the second amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff must also refer to each defendant again in the body of the second amended complaint, where Plaintiff must allege specific facts describing the unconstitutional acts taken by each defendant, including dates, locations, and circumstances. Although Plaintiff may attach additional pages to the form complaint if necessary, he should not use the form merely to refer the Court to attached pages and he should clearly label

the additional pages to indicate which portion of the form the additional pages address. Similarly, if Plaintiff chooses to file a motion for leave to supplement the operative amended complaint, he must ensure that his proposed supplement clearly indicates the portions of the amended complaint it is intended to supplement.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Jeff Zmuda is dismissed from this action without prejudice because the operative amended complaint fails to state a plausible claim against him.

**IT IS FURTHER ORDERED** that Count III of this matter is dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff is granted to and including **December 10, 2025,** in which to file a complete and proper motion for leave to file a second amended complaint and/or a motion for leave to file a supplement to the amended complaint as stated in this order. The clerk is directed to provide Plaintiff with the required form for filing a second amended complaint.

**IT IS SO ORDERED**.

Dated November 10, 2025, in Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE