IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DAVID L. WOODWARD,**

    **Plaintiff,**

    v.                                    CASE NO. 25-3110-JWL

**JEFF ZMUDA, et al.,**

    **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff and Kansas prisoner David L. Woodward brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Lansing Correctional Facility ("LCF") in Lansing, Kansas and he has paid the required filing fee. This matter comes now before the Court on Plaintiff's motion to withdraw his notice of interlocutory appeal (Doc. 37) and his motion for leave to file a second amended complaint (Doc. 38). Because the Tenth Circuit has dismissed the interlocutory appeal in question (Doc. 39), the motion to withdraw notice of interlocutory appeal (Doc. 37) will be denied as moot. For the reasons explained in this order, the motion for leave to file a second amended complaint (Doc. 38) will be granted, but Count III of the proposed second amended complaint will be dismissed for failure to state a plausible claim for relief. The Court will enter a separate e-service order and this case will proceed on Counts I and II of the second amended complaint.

**I. Background and Nature of the Matter before the Court**

    **a. The Initial Complaint (Doc. 1)**

This civil rights action began on June 5, 2025, when Plaintiff filed his initial complaint. (Doc. 1.) Highly summarized, the complaint stated three claims. Count I was based on the

1

permanent suspension of delivery to Plaintiff of certain publications, magazines, and religious materials to which Plaintiff had paid subscriptions and which he had received for over two years without incident. (*See* Doc. 7, p. 3-4.) Although Plaintiff protested the mail censorship notices he received in May 2025, none of his protests were answered. *Id.* at 4. Count I asserted the violation of Plaintiff's First Amendment rights to access information and exercise religious freedom. *Id.*

Count II was based on events that occurred in April 2025, when the door to Plaintiff's cell was left unsecured and three men entered his cell and stole some of Plaintiff's personal property. *Id.* Although Plaintiff immediately reported the incident to LCF staff, the perpetrators evaded capture. *Id.* at 5. Because the perpetrators had threatened to return to Plaintiff's cell, he sought protective custody, and he was moved first to a caged shower, where he was left for 5 hours. *Id.* at 4-5. He was then moved to an infirmary crisis cell and then to a segregation unit, where his time outside of his cell and access to certain services and supplies was limited. *Id.* at 5. Plaintiff was later moved to a protective custody pod but was not assigned a cell that complied with the Americans with Disabilities Act. *Id.* at 6. Count II asserted that the conditions of confinement Plaintiff experienced violated the Eighth Amendment. *Id.*

Count III was based on the censorship of Plaintiff's outgoing mail. *Id.* at 6. Specifically, on May 23, 2025, LCF staff opened two stamped and sealed envelopes that were placed in the outgoing mail and addressed to Corey Woodward, Plaintiff's son and his designated attorney-in-fact. *Id.* The envelopes contained letters and portions of a short story that included graphic descriptions of sexual acts involving girls under the age of 18. *Id.* at 7. Plaintiff received a disciplinary report for possession of sexually explicit materials based on the contents of the envelopes. *Id.* In June 2025, Plaintiff was found guilty of possession of sexually explicit materials and he received time in disciplinary segregation and other restrictions. *Id.* He later learned that all

of his future correspondence would be subject to inspection and censorship. *Id.* As of the date of the initial complaint, Plaintiff believed six letters he attempted to mail Corey Woodward were intercepted by LCF mail room staff. *Id.* Count III asserted the violation of Plaintiff's First Amendment rights "'to write stories and correspond with family.'" *Id.* It also asserted that the opening of the mail to Corey Woodward violated attorney-client privilege. *Id.* Plaintiff sought injunctive relief, compensatory damages, reimbursement of costs and fees incurred in this matter, declaratory relief, and an order vacating his disciplinary conviction. *Id.* at 8.

Because Plaintiff is a prisoner, the Court was required by statute to screen his complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are

3

insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, at 550 U.S. at 570).

The Court screened the complaint and, on July 7, 2025, issued a memorandum and order ("M&O") identifying certain deficiencies in the complaint that left it subject to dismissal. (Doc. 7.) The M&O explained that the complaint did not comply with Rule 18(a) and 20(a)(2) of the Rules of Civil Procedure, which govern the joinder of multiple defendants and claims in a single action. *Id.* at 8-10. It further explained that Plaintiff's use of general and collective terms to refer to actions by individuals left unclear which named Defendant committed which act and which Defendant faced liability under each Count. *Id.* at 12-13.

The M&O also informed Plaintiff that vicarious liability does not apply in suits brought under 42 U.S.C. § 1983, so to the extent that the complaint asserted a claim against a defendant due to his role as the supervisor of other individuals who violated Plaintiff's constitutional rights, it failed to state a plausible claim against the supervisor. *Id.* at 14. The M&O also set forth Rule 8 of the Federal Rules of Civil Procedure, which requires that a complaint must contain a short and plain statement of each claim showing that the plaintiff is entitled to relief so that the opposing parties will have fair notice of the claims against them and so that the Court is able to conduct the required screening of the complaint. *Id.* at 14-15.

The M&O further explained that even liberally construing the pro se complaint and taking all the well-pleaded facts therein as true, Count III failed to state a plausible claim for relief. *Id.* at 15. First, Corey Woodward's status as Plaintiff's attorney-in-fact does not render written communication between Plaintiff and Corey Woodward legal mail or otherwise create a privilege. *Id.* at 15-17. Second, because the letters do not fit the definition of legal mail, official mail, or privileged mail under the applicable Kansas regulations, Plaintiff cannot state a plausible claim for relief based on the inspection and censorship of the letters unless the application of the regulations violated his constitutional rights. *Id.* at 18. The M&O explained that to show that his First Amendment rights were violated in this context, he "'must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests.'" *Id.* at 19 (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010)).

Third, the complaint left "unclear whether Plaintiff intends to base his claim in Count III on the inspection of his letters to Corey Woodward," the censorship of those letters, the resulting disciplinary proceedings, the controlling regulations, or some combination thereof." *Id.* at 20. Thus, the Court directed Plaintiff to make clear in his amended complaint the nature of his claim and the acts on which it was based. *Id.* at 20. The Court granted Plaintiff time in which to file an amended complaint that cured the deficiencies identified in the M&O. *Id.* at 21-23.

### b. The Amended Complaint (Doc. 8)

Plaintiff timely filed his amended complaint on July 17, 2025. (Doc. 8.) The amended complaint named as Defendants Kansas Secretary of Corrections Jeff Zmuda, former LCF Warden Jesse Howes, LCF mail clerk J. Crouse, KDOC CM II Darcie Holthaus, and LCF ISA Leslie West. (Doc. 8, p. 1-3.) Count I of the amended complaint asserted the violation of Plaintiff's First Amendment rights to access information and exercise his religion. *Id.* at 4. As supporting facts for

5

Count I, Plaintiff alleged that after LCF ceased delivering magazines to him on April 1, 2025, he asked an LCF Unit Team Supervisor why he was no longer receiving his magazines. *Id.* She replied that Defendant Howes, who was the LCF warden at the time, and Defendant Holthaus had permanently suspended delivery of all publications to Plaintiff. *Id.* On May 3, 2025, Plaintiff began receiving mail censorship notices issued by Defendant Crouse that stated that the publications were a threat to either public officials or the general public and/or that Plaintiff was engaging in unauthorized correspondence with persons under 18 years old. *Id.* Later notices stated that delivery was denied because the publications contained pictures or images of persons under 18 years old. *Id.* at 5. Plaintiff protested the censorship by mail to Defendant Zmuda, but his protests were denied. *Id.* at 5.

In Count II, Plaintiff asserted the violation of his right to correspond by mail with individuals outside of LCF, as guaranteed by the First and Fourteenth Amendments. *Id.* at 4. As supporting facts for Count II, Plaintiff alleged that on May 23, 2025, two letters addressed to Corey Woodward were censored and not processed into outgoing mail.. *Id.* at 4, 6. Plaintiff asserted that Defendant Crouse opened the letters. *Id.* at 4. Plaintiff further alleged that up to six additional letters he placed into outgoing mail were intercepted and not mailed, even though previous letters had been mailed without difficulty. *Id.* at 4-5. Plaintiff asserted that all of his outgoing mail is "being stopped," noting continuing efforts of publishers to mail material to him despite Plaintiff's informing those publishers by mail that LCF refused to deliver the material to Plaintiff. *Id.* at 5.

In Count III of the amended complaint, Plaintiff asserted the violation of his First Amendment right to free speech. *Id.* at 7. As supporting facts for Count III, Plaintiff points to the two letters to Corey Woodward that included "partial stories," were opened on May 23, 2025 by Defendant Crouse, and were not placed in the outgoing mail by LCF staff. *Id.* Plaintiff further

6

alleged that he had not received the required notice of censorship that states the reason his mail is being censored. *Id.* at 6. He also referred to the disciplinary action that occurred based on the content of the stories in his letters to Corey Woodward and he asserted that any future stories he writes will be subject to censorship and seizure and may result in further punishment. *Id.* Thus, Plaintiff asserted, he essentially "is prohibited from writing fictional stories of his choice." *Id.*

The Court began the statutorily required screening of the amended complaint and found that the proper processing of the claims therein could not be achieved without additional information from the appropriate Kansas Department of Corrections ("KDOC") officials. Thus, it ordered the appropriate KDOC officials to prepare and file a *Martinez* Report ("the Report") regarding the claims in the amended complaint. (Doc. 10.) The KDOC filed the Report on September 18, 2025. (Doc. 12.) Submission of the exhibits in support of the Report was completed on October 9, 2025. (*See* Docs. 22 and 23.)

The Court resumed the screening of the amended complaint and, on October 23, 2025, the Court issued a memorandum and order to show cause ("MOSC"). (Doc. 27.) The MOSC informed Plaintiff that Defendant Zmuda was subject to dismissal from this action because, even liberally construed, the amended complaint alleged only supervisory liability, which, as explained in the M&O, does not apply to claims under 42 U.S.C. § 1983. *Id.* at 6-7. The MOSC further advised that Counts I and II, as pled in the amended complaint, would survive the statutorily required screening of the amended complaint. *Id.* at 7. Count III, however, was subject to dismissal because it failed to state a plausible claim for relief. *Id.* at 8. The MOSC explained:

> Count III is subject to dismissal because it fails to state a plausible claim for relief.[1] As noted above, Count III asserts the violation of Plaintiff's First Amendment right to free speech, based on the seizure of letters Plaintiff wrote to

---

[1] As previously explained to Plaintiff, to the extent that he intends in Count III to argue that his disciplinary conviction violated his First Amendment rights, any such argument must be dismissed because Plaintiff has not shown that the disciplinary conviction or any resulting punishment has been invalidated. (*See* Doc. 7, p. 20.)

7

his son and placed in the outgoing mail in May 2025. (Doc. 8, p. 6-7.) The letters, which were submitted by the KDOC as sealed exhibits to the *Martinez* Report, contain graphic descriptions of the repeated rape of a six-year-old child. (Doc. 19-2.) Plaintiff received a disciplinary report based on the content of the stories and he asserts in Count III that he is now "prohibited from writing fictional stories of his choice." (Doc. 8, p. 6.) This assertion is overly broad and not supported by specific alleged facts. Rather, the facts alleged in the complaint, when supplemented by the *Martinez* Report and its exhibits, reflect that Plaintiff is prohibited from writing fictional stories that describe the rape of children. Plaintiff asserts in Count III that this prohibition violates his First Amendment right to free speech.

As the Supreme Court recognized in 1974:

> [A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

*Pell v. Procunier*, 417 U.S. 817, 822 (1974).

Nearly 13 years later, the Supreme Court clarified that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This "standard is necessary" to ensure that "prison administrators . . . , and not the courts, . . . make the difficult judgments concerning institutional operations." *Id.* (quoting *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 128 (1977)). "'[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Id.* at 84 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1074)). Moreover, the task of prison administration has been committed to the executive and legislative branches of government, so "separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." *Id.* at 85.

The Supreme Court has identified several factors relevant to determining the reasonableness of the prison restriction that allegedly violates the First Amendment, which are referred to as "the *Turner* factors." *See Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012). The *Turner* factors are:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what

8

> effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.
>
> *Al-Owhali*, 687 F.3d at 1240 (quoting *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002)). The first factor is an essential requirement, "'not simply a consideration to be weighed'" against the other factors. *Id.* (quoting *Boles v. Neet*, 486 F.3d 1177, 1181 (10th Cir. 2007)).
>
> In the context of the initial screening of a prisoner's § 1983 complaint, the Court does not require a plaintiff to fully plead or argue the *Turner* factors. *Id.* at 1240 n.2. But "*Iqbal and Turner* require an inmate to 'plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.'" *Id.* at 1240 (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010)). Although Plaintiff need not "identify every potential legitimate interest and plead against it[,]' . . . he is required to 'recite[] facts that might well be unnecessary in other contexts.'" *Id.* (quoting *Gee*, 627 F.3d at 1187).
>
> K.A.R. 44-12-313(a) prohibits Kansas inmates from having "in [their] possession or under [their] control any sexually explicit materials, including . . . writing . . . ." Subsection (b) of the regulation defines when material is considered sexually explicit and includes material that "contains any . . . description of . . . [s]exual intercourse . . . ." K.A.R. 44-12-313(b). Even liberally construing the amended complaint and taking all well-pleaded facts therein as true, the Court cannot draw a plausible inference that no legitimate penological interest is reasonably related to the prohibition against Plaintiff, who is serving a sentence imposed for convictions of sex crimes involving minors[2], writing stories that describe raping a child. In other words, Plaintiff has failed in the amended complaint to allege facts that, if taken as true, support the plausible inference that the restriction he challenges in Count III is not reasonably related to a legitimate penological interest. Thus, Count III fails to state a claim on which relief can be granted.

(Doc. 27, p. 8-10.) The MOSC directed Plaintiff to show cause why Defendant Zmuda and Count III of the amended complaint should not be dismissed. *Id.* at 10.

---

[2] Plaintiff is a convicted sex offender who, in 1991, "pled guilty to the felony murder of a 5-year-old child, A.S.[,]" and "pled guilty to kidnapping, two counts of sexual exploitation of a child, rape, and indecent liberties with a child in connection with the sexual molestation of a different child." *State v.Woodward*, 2023 WL 8868564, *1 (Kan. Ct. App. Dec. 22, 2023) (unpublished), *rev. denied* May 22, 2025; *see also Woodward v. Cline*, 2012 WL 2178855 (D. Kan. June 14, 2012) (unpublished).

Plaintiff filed a response, in which he argued that the Court should not accept as true the facts alleged in the Report submitted by the KDOC. (Doc. 28, p. 20-30.) The response also disputed the Court's conclusion that the amended complaint did not state a plausible claim for relief against Defendant Zmuda and that Count III of the amended complaint failed to state a claim upon which relief could be granted. *Id.* at 1-19. Plaintiff expressed in the response that he wished to supplement the amended complaint and amend it to add defendants and claims. *Id.* at 6-7, 36.

On November 10, 2025, the Court issued an M&O in which it reassured Plaintiff of the proper use of the Report, it dismissed Defendant Zmuda from this matter, and it dismissed Count III of the amended complaint for failure to state a claim. (Doc. 29, p. 1, 6-9.) This M&O also addressed Plaintiff's requests to supplement and amend the amended complaint, concluding:

> The Court will grant Plaintiff time in which to file a motion for leave to file a second amended complaint and/or a motion for leave to supplement his amended complaint. Plaintiff is cautioned, however, that any proposed supplement to the amended complaint that he files should not include claims against Defendant Zmuda or supplements to Count III of the amended complaint since this order dismisses those claims. Similarly, Plaintiff should not include in any proposed second amended complaint the claim identified as Count III in the amended complaint, nor should he name Jeff Zmuda as a Defendant unless the facts alleged in the proposed second amended complaint justify doing so.

*Id.* at 11.

Plaintiff filed a notice of interlocutory appeal from this order (Doc. 30); the Tenth Circuit has since dismissed the interlocutory appeal (Doc. 39). On November 20, 2025, Plaintiff filed a motion for leave to file a supplemental pleading. (Doc. 33.) The Court granted the motion the following day (Doc. 35) and reminded Plaintiff that if he wished to add claims or defendants to this action, he was required to file a motion for leave to file a second amended complaint on or before December 10, 2025. On December 2, 2025, Plaintiff filed the motion for leave to file second amended complaint that comes now before the Court. (Doc. 38.)

## II. Discussion

The Court has conducted the statutorily required screening of the proposed second amended complaint (Doc. 38-1) attached to the motion for leave to file a second amended complaint (Doc. 38). The proposed second amended complaint names as Defendants former LCF Warden Jesse Howes, KDOC CM II Darcie Holthaus, LCF ISA Leslie West, LCF Administrative Assistant Jennifer Crouse, and LCF mail clerks R. Wedel, B. Hart, and C. Kincaid. (Doc. 38-1, p. 1-4.) As the background of the case, Plaintiff alleges that, by order of Defendants Howes and Holthause, delivery of all of his publications, magazines, and religious materials ceased on April 1, 2025. *Id.* at 2. He further alleges that since May 23, 2025, incoming and outgoing letters to and from him have been censored or prevented from reaching their intended recipient. *Id.* Plaintiff asserts that unconstitutional application of related Kansas administrative regulations caused the censorship. *Id.*

In Count I of the proposed second amended complaint, Plaintiff asserts the violation of his First Amendment rights to access information and to freedom of worship based on the refusal to deliver to him publications and magazines. *Id.* at 5. As supporting facts for Count I, Plaintiff points to Defendants Howes and Holthaus' order that delivery of publications and magazines to Plaintiff be permanently suspended in April 2025. *Id.* Plaintiff also states that beginning on May 3, 2025, he received censorship notices that documented changing reasons for the censorship, including a new policy implemented in mid-July 2025 that all books and magazines must be ordered through an approved vendor. *Id.* at 5-6. Plaintiff alleges that the censorship notices were issued by Defendants Crouse, Wedel, Hart, and Kincaid. *Id.* at 6.

In Count II of the proposed second amended complaint, Plaintiff asserts the violation of his First and Fourteenth Amendment right to correspond by mail with individuals outside of LCF.

*Id.* at 5. As supporting facts for Count II, Plaintiff asserts that on May 23, 2025, two outgoing letters addressed to Corey Woodward were censored by Defendant Crouse and were prevented from leaving LCF by Defendant West. *Id.* at 5-6. Since then, up to six additional letters to Corey Woodward have suffered the same censorship and seizure, which Plaintiff asserts is occurring at the hands of Defendants Crouse, Wedel, Hart, Kincaid, and West. *Id.* at 5-6.

In Count III, Plaintiff asserts that K.A.R. 44-12-601 and K.A.R. 44-12-313, as applied to him, violate his First Amendment right to free speech and his Fourteenth Amendment "liberty interests." *Id.* at 6-8. K.A.R. 44-12-13 defines sexually explicit materials and K.A.R. 44-12-601 allows sexually explicit material to be censored. *Id.* at 7. As supporting facts for Count III, Plaintiff returns to the envelopes addressed to Corey Woodward that were opened and censored by Defendant Crouse on May 23, 2025 and given to Defendant West, "who prevented their delivery." *Id.* Plaintiff asserts that the letters were censored because they contained sexually explicit "partial stories which were claimed [to have been] written by" him. *Id.* at 6-7.

He argues that the letters should have been mailed to his son, pointing out that "[l]etters in the free world are not censored or interfered with for the reasons used to censor and stop [P]laintiff's mail from reaching their intended recipient" and contending that his mail should be equally free to reach its "intended recipient in the free world." *Id.* As relief, the proposed second amended complaint seeks injunctive relief, declaratory relief, and reimbursement of court costs and the cost of magazines that were "lost or no longer usable due to time restraints." *Id.* at 9.

Counts I and II, as pled in the proposed second amended complaint, survive the statutorily required screening process. They are not frivolous or malicious, they state a plausible claim for relief, and they do not seek monetary relief from immune defendants. *See* 28 U.S.C. § 1915A(b)(1)-(2). Count III, on the other hand, must be dismissed. Despite the Court's caution that

12

"Plaintiff should not include in any proposed second amended complaint the claim identified as Count III in the amended complaint," (*see* Doc. 29, p. 11), Count III of the proposed second amended complaint continues to assert essentially the same claim as was in the now-dismissed Count III of the amended complaint. Therefore, Count III of the proposed second amended complaint must be dismissed for the same reasons Count III of the amended complaint was dismissed, which were explained in detail in the Court's October 23, 2025 MOSC and are quoted above. (*See* Doc. 27, p. 8-10.) Simply put, Count III of the proposed second amended complaint fails to allege facts that, if taken as true, support a plausible inference that K.A.R. 44-12-601 and K.A.R. 44-12-313, as applied to him, are not reasonably related to a legitimate penological interest. Therefore, Count III fails to state a plausible claim for relief.

The proposed second amended complaint (Doc. 38-1) will become the controlling pleading in this matter. Count III of the second amended complaint will be dismissed. With respect to Counts I and II of the second amended complaint, the Court concludes that a responsive pleading is necessary and this matter may proceed to service. The Court will enter a separate e-service order that will set deadlines for the responsive pleading.

**IT IS THEREFORE ORDERED BY THE COURT** that the motion to withdraw notice of interlocutory appeal (**Doc. 37**) is **denied as moot.**

**IT IS FURTHER ORDERED** that the motion for leave to file a second amended complaint (**Doc. 38**) is **granted.** The clerk is directed to file pages 1 through 9 of the document currently located at Doc. 38-1 as the second amended complaint. The clerk is further directed to file 10 through 29 of the document currently located at Doc. 38-1 as a memorandum in support of

the second amended complaint and pages 40 through 56 of the document currently located at Doc. 38-1 as exhibits to the memorandum in support of the second amended complaint.

**IT IS FURTHER ORDERED** that Count III of the second amended complaint is **dismissed** for failure to state a claim.

**IT IS FURTHER ORDERED** that this case may proceed to service on the defendants. A separate e-service order will be entered.

**IT IS SO ORDERED**.

Dated December 15, 2025, in Kansas City, Kansas.

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE