UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID L. WOODWARD

VS.

JESSE HOWES, DARCIE HOLTHAUS
LESLIE WEST, JENNIFER
CROUSE, R. WEDEL, B. HART
AND C. KINCAID

CASE NO. 25 cv 3110 JWL

MEMORANDUM IN SUPPORT OF
CIVIL RIGHTS COMPLAINT PURSUANT
TO 42 U.S.C. 1983

# MEMORANDUM

COMES NOW David L. Woodward plaintiff pro se in this matter before the court and herewith submits his Memorandum in support of the claims made in Counts I, II and III of his civil rights complaint now before the court.

"It has long been held that Federal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution. Because prisoners retain these rights, when a prison regulation or practice offend a fundamental constitutional guarantee, federal courts must discharge their duty to protect constitutional rights", Turner v. Safley, 482 U.S. 78 (1987) (emphasis added)

Included herein, the named defendants have invoked certain regulations to apply censorships to plaintiffs incoming mail in the form of magazines and publications. Also certain regulations to censor outgoing mail. Plaintiff hopes to show that these regulations should not be applied through the practices employed to deprive plaintiff of his 1st and 14th amendment rights under U.S. Constitution Amends I and XIV.

1

It was on April 1ST, 2025, when suddenly the delivery of all of plaintiff's magazines ceased. He inquired of Unit Team Supervisor Speer as to why he was no longer receiving them. She responded that a Compact Administrator and the Wardens had permanently suspended delivery of them. (See in Appendix)

It wasn't until May 3rd, 2025, when Mail Censorship Notices began arriving, issued by J. Crouse, stating all the magazines posed a threat to public officials or the general public and that plaintiff was having Unauthorized correspondence with persons under the age of 18 years old. Also unauthorized images of persons under 18 years old.

There were no specifics given as to how the magazines such as TV Guide, TV Weekly, US Weekly, People, ReMIND, ELLE, Harper's Bazaar, Cosmopolitan, Woman's Day, Town and Country, Discover and Amazing Facts (both religious publications) were a threat to anyone.

Plaintiff also questioned how a magazine could be considered corresponding with anyone? He looked up the word correspond in the Oxford New Desk Dictionary and Thesaurus, Third Edition July 2009. It was defined as 2. "exchange letter with". This was the common use of the term.

It appears then the reasons given for censorship are overly broad and sweeping, arbitrarily applied, and fanciful in nature. There is no possible threat in say TV program listings and plaintiff is not exchanging letters with minors.

2.

According to the Supreme Court in Thornburgh v. Abbott, 490 U.S. 401 (1980):

"Publishers who wish to communicate with those who, through subscription, willingly seek their point of view, have a legitimate interest under the Federal Constitution's first amendment in access to subscribers who are prisoners".

It should follow then that prisoners have an equal interest in and right under the first amendment to view and read the material from publishers.

Should not it also be apparent how important free speech is to a free society, that the first amendment to our Constitution provided for that. For a prisoner, otherwise isolated from society, publications such as magazines convey information not readily accessible through other mediums.

Neither should any of plaintiff's magazines remotely involve any reasonable penological interest such as the security of the prison environment or the safety of it's employees or inmates housed therin. Defendant's offer no specific reason of this.

All the protests of the censorships have been sent to the Secretary of Corrections, Jeff Zmuda, citing 1st amendment violations, that the reasons for censorship were arbitrary, fanciful and absurd. The magazines are available to the general public and are no threat. Also that plaintiff has been receiving them for years while in prison, prior to Apr. 1st with no sanctions. Each of his protests were returned denied. 16 examples are attached.

According to Unit Team Supervisor Speer, it was all of the Wardens, i.e. Jessie Howes and Deputies Reece, Ball and

3.

Skidmore, as well as a Compact Administrator who was believed to be CMII Wildermuth, who initiated the ban of the magazines. All of them combined together.

However, the identity of the CMII may have been disclosed in a letter plaintiff received on June 6th, 2025. It was backdated to May 13th and was from a Darcie Holthaus CMII Facility Management, Kansas Dept. of Corrections. The letter is attached for reference purposes.

In her letter she makes reference to a DR (Disciplinary Report) plaintiff received on April 2nd, 2025, stating he was making and possessing "child pornography". This is categorically incorrect. The actual DR was for only possessing sexually explicit material, not for "making" it. The report said the material appeared to have been made from magazine clippings. The term "child pornography" was not used in the DR.

The letter also stated because plaintiff is a "sex offender" without "overrides", he does not get to possess images or pictures of children. There is no court ordered basis for this restriction. His Journal Entry of Sentencing of 1991, does not impose this as part of his sentence or a sanction upon him. Just as the court of conviction does not deprive plaintiff of magazines even if they do contain pictures of children. Is the KDOC enhancing plaintiff's punishment beyond what a court of law imposed?

Defendant Holthaus goes on stating some unnamed "Sex Offender Specialist" was consulted to assess plaintiff's "lack of positive progress". He questions what "progress" is being referred to? He is NOT, NOR HAS HE EVER BEEN

4.

a part of any programs related to "sex offenses" in order to be measured for progress.

All this aside, it was a fact prior to April 1st, 2025, that plaintiff was receiving magazines without censorships for the reasons given; including since Aug. 1st, 2025, censorships now for Internal Management Policy and Procedure (IMPP) 12-127D. This new policy began on July 15th, 2025. It prohibits all publications into the facilities of the K.D.O.C. unless they have been ordered through three approved vendors.

Since plaintiff subscribed to all his current publications prior to April 1st and has been receiving them, ex post facto should be applicable to allow him to continue receiving them. This regardless of if they have pictures of persons under 18 years old in them, or been ordered through "approved" vendors.

This court in Perkins v. Kan. Dep't of Corr in 2004, gave an analysis of ex post facto, in that a new regulation that assigns more disadvantageous consequences prohibiting plaintiff's magazines now than was in effect when he was allowed to subscribe to them or receive them prior to April 1st and/or July 15th should be held invalid under the rule of ex post facto.

There is also a problem involving free publications such as catalogs and other written

5.

material. Catalogs like from Blick Art Materials will also be prohibited under IMPP 12-127D. Plaintiff is allowed in cell handicraft privileges including drawing with colored pencils and other artistic endeavors. He has in the past been able to receive the Blick catalog to order art supplies.

By allowing the in cell handicraft, the K.D.O.C. created a liberty interest. Being denied the ability to order art supplies available through Blick's catalog now violates the liberty interest.

As with the magazines being received prior to April 1st and/or July 15th, the catalog from Blick should also be allowed in under ex post facto.

The mail censorship notices being issued on a continuing basis since May 3rd are being issued by Jennifer Crouse, R. Wedel, B. Hart and C. Kincaid. They have all employed the same reasons for censorship as has been outlined herein.

Plaintiff believes that these reasons violate his first amendment right to be able to receive and utilize these publications and his vested interest in that he paid for the subscriptions. There is a loss involved in the matter of the TV Guides and the TV Weekly. Content in these involve TV program listings for the day and time for a particular issue. After the days and times have elapsed, the issues are worthless, thus the price paid is lost.

6.

Count II encompasses the censorship of two particular letters on May 23rd, 2025. It also involves letters posted on May 26th and June 3, June 6th, Oct. 6th, 13th and 20th never received by the addressee, Corey Woodward, plaintiff's son.

Under a Durable Power of Attorney, Corey Woodward is named as plaintiff's Attorney-in-fact. As such he has unlimited power to act in plaintiff's behalf, as plaintiff's agent.

Section F of the P.O.A. appoints Corey to act as an agent to conduct any business venture that plaintiff may wish to engage in.

In plaintiff's May 23rd letters were parts of a short story plaintiff enclosed for Corey to edit, type up and submit for possible publication. The letters gave instructions for plaintiff's agent to do that. Corey is that agent.

Instead of reaching it's intended destination, Jennifer Crouse opened the letters, removed the contents and turned it over to Leslie West. She in turn prevented the letters and story from reaching Corey.

Regulation 44-12-601 provides for examining mail for contraband. It also requires any material censored be accompanied by a mail censorship

7.

notice to both the sender and recipient of the censored material.

Neither plaintiff nor Corey, the recipient, received any such notice the letters had been censored. In _Pell v. Procunier_, 417 U.S. 517 (1974) the Supreme Court stated that decisions to censor or withhold delivery of a particular letter must be accompanied by minimal procedural safeguards.

Although it is believed Pell refers to letters coming into a facility, it should equally apply to outgoing letters also. More fitting would be the application of _Procunier v. Martinez_, 416 U.S. 396 also in 1974:

"Communication by letter is not accomplished by the act of writing words on paper. Rather it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result and censorship of the communication necessarily impinges on the interest of each. Whatever the status of a prisoner's claim to uncensored correspondence with an outsider, it is plain the latter's interest is grounded in the first amendment's guarantee of freedom of speech... For the addressee as well as the sender of direct personal correspondence, the right derives from the first and fourteenth amendment's protection against unjustified governmental interference with the intended communication. (_Lamont v. Postmaster General_, 381 U.S. 301 (1965))·

8.

Plaintiff later learned from a "Martinez Report" defendants supplied the court that he had been placed on a "readable mail list". No reason was given for this extraordinary practice.

The 10th Circuit echoed Procurier in <u>Milones v. Williams</u>, 691 F. 2d 931 (10th Cir. 1982) in stating a prisoner has the right to be free from censorship of correspondence because 1st Amendment rights do not terminate upon institutionalization

The 10th Circuit reinforced Milones in <u>Treff v. Gralerka</u>, 74 F. 3d 191 (10th Cir. 1996) stating:

"Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the first Amendment and a qualified liberty interest under the Fourteenth Amendment."

Defendants actions in censoring and interfering with plaintiff's correspondence and contents of his letters being censored violate the guarantee of his freedom of speech and a liberty interest in the contents reaching their intended destination. They must cease and desist.

Count III involves defendants Crouse and West's reason for censorship of plaintiff's letters and short story. It was said plaintiff short story was sexually explicit with graphic sexual content. Therefore he was not allowed to mail it out per 44-12-601 ban on

9.

sexually explicit material. For probable penological reasons, sexually explicit material as described by 44-12-313 could reasonably be prevented from coming into a facility. How could any penological reason prevent sexually explicit material in a fictional story from being mailed out?

Smith v. Arkansas State Highway Employees, 441 U.S. 463 (1979) states:

"The First Amendment protects the rights of an individual to speak freely, to advocate ideas... The government is prohibited from infringing upon these guarantees either by a general prohibition against certain forms of advocacy..."

Robert v. United States Jaycees, 468 U.S. 609 (1984) continues with:

"An individuals freedom to speak ... could not be vigorously protected from interference by the state unless a correlative freedom to engage in group effort toward those ends were not also guaranteed."

Plaintiff First amendment rights did not end when he was incarcerated at Lansing Correctional Facility. He retains the right of freedom of speech and expression. Plaintiff had the right to send the letter and story to Corey Woodward. Using 44-12-601 censorship of sexually explicit material to prevent this violates that right. See NAACP v. Button, 371 U.S. 415 (1963).

10.

"Regulatory measures, no matter how sophisticated, <u>cannot</u> be employed in purpose or in effect to stifle, penalize or curb the exercise of rights under U.S. Const. amend 1. Broad prophylatic rules in the area of free expression are suspect." (emphasis added).

Most certainly defendant's use of 44-12-601 prohibition of sexually explicit material to stifle and curb plaintiff's correspondence with Corey and inclusion of the story therein interfered with plaintiff's freedom of speech and first amendment.

Any regulation such as 44-12-601 which uses this reason to violate the first amendment has to be unconstitutional. If the story material had pertained to the security of the facility or safety of staff and residents, there would be a penological reason to censor it. It did not.

Plaintiff challenges 44-12-313 for violations of the 1st and 14th amendments. It meets the criteria of a broad prophylatic rule prohibiting free expression in the areas of virtual creativity in drawing and writing about anything that involves sexual expression. It is sophisticated in that it prohibits possession of sexually explicit material, which in turn would prohibit virtual creations in artful endeavors and writing about sexual experiences. To write or create virtual art involving sex one would have to possess the material. That in turn prohibits

11.

freedom of speech and or expression. in creating it.

44-12-313 also penalizes for possession of sexually explicit material. However it does so in an unequal manner violating the equal rights clause of the 14th amendment. There are two levels of punishment for possessing sexually explicit material. In the KDOC, a level 1 or class 1 violation is equivalent to a "felony". A class 2 violation is equivalent to a "misdemeanor".

If an inmate has been convicted of a sex offence and violates 44-12-313, he is charged as a class 1 violation. Otherwise non-sex offenders are charged as a class 2 violation.

Equal protection is discussed in Perkins v. Kan. Dept. of Corrections. That to state an equal protection claim, one must show that because of a suspect classification that they are treated differently from other inmates. Certainly enhancing punishment simply because one has been classified as a "sex offender" is remakkably different treatment from those who have no sexual offenses. Sexually explicit material is the same for both, the punishment should also be the same.

For penological purposes, we have real vs. virtual. One might complain about sexual explicity when it involves real people exhibiting sexually explicit behavior. However when the sexual explicity involves virtual or

12

fictional drawings or writing, this jumps from reality to fantasy and is a right of free speech or expression under the first amendment.

We also have legal implications. Plaintiff while doing legal research in the prison law library saw cases involving those convicted of various sex offenses. In these cases, the victim would, or the court transcripts would, give graphic descriptions and details of the offense committed. To possess copies of these cases for reference purposes would violate 44-12-313 for all inmates.

This should qualify in making 44-12-313 overly broad in it's application. It would also inhibit inmates from using these cases to formulate argumentation in motions and appeals, by writing them out and possessing them

Equal protection under the laws also involves what persons in the free world may possess verses what a prisoner may possess. Some items such as weapons have a penological reason in prohibition for prisoners. However what penological reason could be given for possession of photo's, drawings and writing containing sexually explicit material that is allowed persons not incarcerated?

As has been stated, prison walls do not separate a prisoner from the rights secured by the Constitution. No penological reason is given for the implimentation of 44-12-601 and 44-12-313 other than they just exist.

13.

In plaintiff's case, the story that was intercepted, censored and seized preventing it, and the letters also, from reaching Corey were deemed sexually explicit. Under the definitions in 44-12-313 it would be.

However, the other letters which also did not reach Corey, six others not counting the first two, did not contain any sexually explicit material. Why then were they stopped and intefered with? No censorship notices were given for any of the eight letters.

Plaintiff writes a variety of material. He composes poetry and has been published in this regard. He also writes commentaries on such subjects as religion, politics, world affairs, philosophy, human nature and any other subjects of interest, besides, sexuality.

The other six letters contained such material that plaintiff sent to his agent, Corey Woodward, for possible publication. The defendants, Jennifer Crouse, R. Wedel, B. Hart, C. Kincaid in the LCF mail room and Leslie West prevented this material from reaching Corey by the U.S. Mail.

How does plaintiff know this? From their own Martinez Report defendants state plaintiff's mail has been put on a "readable list" now for some ungiven reason. This applies to outgoing mail. To be on a "readable list", this is an extraordinary practice that is rarely employed. So this is proof his mail is being intefered with.

14.

The 14th amendment's equal rights clause also encompasses the 1st amendment freedom of speech aspects under an author's freedom to write whatever he pleases, even that of advocating against the government of the United States.

In a prison environment, what an inmate may speak or write is being controlled by regulations. If an author on the streets in the free world desires to write graphic sexually explicit material and have it published, he is free to do so. Attempt by various sources has attempted to legislate against pornography in the adult sector and time and again the U.S. Supreme Court has declared such legislation as unConstitutional. This is real action by real people performing even sexual intercourse on video.

However plaintiff is not indulging in reality, but fantasy. Same as an author in the free world is free to write on subjects, even sexually explicit ones, plaintiff should not be prohibited, under equal rights, from doing so because a regulation in prison forbids it. A government interest in such cases must be unrelated to the suppression of free expression under the first amendment, see in Procurrier v. Martinez, supra.

It is understood courts allow deference to prison's authorities a wide latitude in the security of their facilities and rightfully

15.

so, this does not however prevent a federal court from reviewing prison regulations that have nothing to do with the security and safety of preventing escapes, riots, assaults, killings, theft, and so on, that would be of specific penological interests, see in <u>Jacklovich</u> <u>v. Simmons</u>, 392 F. 3d 420 (10th Cir. 2004).

Plaintiff herein is claiming that he had a 1st amendment right to not only send the story, censored and seized by Jennifer Crouse and Leslie West, to Corey Woodward for possible publication; but also the right to write it under the 1st and 14th amendment rights of free speech and equal rights, as other authors in the free world do. The defendant's stopped this by use of 44-12-601 and 44-12-313. The material in the letter or story had nothing involving penological concerns about Lansing Correctional Facility or the Kansas Dept. of Corrections security and safety thereof.

Therefore their use of 44-12-601 and 44-12-313 to prevent the above is being claimed unConstrutional and in violation of the 1st and 14th amendment rights of plaintiff. For these reasons as stated, the two letters of May 23rd and their contents should not have been censored and prevented from reaching the addressee, Corey Woodward

16

On November 18, 2025, on a form provided by the Postmaster General in Washington D.C., plaintiff filed a formal complaint hopefully to launch an investigation into the interference in processing the outgoing letters of May 26, June 3rd and 6th, Oct. 6th, 13th and 20th which were never received by Corey Woodward. These letters were in stamped sealed envelopes posted at the Lansing Correctional Facility.

Since as stated before, Leslie West stated that all of plaintiff's outgoing mail is on a "readable list", which means it is being opened and read before it leaves the facility. Apparently it never proceeds beyond this to be sent on through the U.S. Postal Service.

Plaintiff has no way of knowing if his official mail complaint to the Postmaster General even made it out of the facility, since none of his personal mail does?

There is nothing in his personal mail worthy of note to be censored since none of the other letters contained "sexually explicit" material. As he has also stated, no censorship notices on the letters, even those of May 23rd, have been issued as is required by 44-12-601. It appears defendants are just arbitrarily applying it.

17.

In conclusion, herein plaintiff has claimed that prison regulations, policy and actions used for different censorship purposes have violated his first amendment rights to receive publications and that of correspondence and free speech and his liberty interests to the same.

Now as to plaintiff's liberty interests in these cases, they arose by regulations, policies and actions by defendants in using these to inhibit or prevent his 1st amendment rights, as guaranteed by the use of the word "liberty" in the Constitution, in connection with the first amendments guarantee of freedom of speech and expression, see in Estate of DiMarco v. Wyo Dep't of Corr., 473 F.3d 1334 (10th Cir. 2007).

Plaintiff had a liberty interest in every case complained of and equal rights to enjoy these interests. To prevent this violates the 14th amendment guarantees of our U.S. Constitution, as well as the 1st amendment rights, free speech.

THEREFORE, if the court finds in plaintiff's favor, he prays it grant the relief requested in his complaint or any other relief that meets the requirement of justice under the Constitution of the United States and it's Amendments.

Respectfully Submitted

David L. Woodward

18.

## CERTIFICATE OF SERVICE

I, David L. Woodward do hereby certify I submitted the proposed Second Amended Civil Rights Complaint and Memorandum is Support thereof to the Unit Team of pod A8 on Dec. 1st, 2025, to be transported to the Leew Library of Lansing Corr. Fac, Lansing, KS, for efiling to the Clerk, U.S. Dist. Court for Kansas.

David Woodward

19